# CHARLESTON.

SAMUEL STARCHER, ADM., ETC., v. SOUTH PENN OIL CO. *et al.*

Submitted January 29, 1918.    Decided February 5, 1918.

1. JURISDICTION OF COUNTY COURTS—*Appointment of Administrators.*
    The county courts have general jurisdiction over the appointment and qualification of personal representatives of deceased persons. (p. 593).

2. CLERKS OF COURTS—*Jurisdiction—Recess.*
    During the recesses of the regular sessions of such county courts, the clerks thereof are clothed with such general jurisdiction, subject to the authority of such county courts at the next regular session to review the action of such clerks. (p. 593).

3. JUDGMENT—*Collateral Attack—Orders and Decrees of Court of General Jurisdiction.*
    Ordinarily the orders and decrees of a court touching a subject-matter over which it has general jurisdiction are not open to collateral attack. (p. 593).

4. EXECUTORS AND ADMINISTRATORS—*Appointment of Clerk—Confirmation by Court—Collateral Attack.*
    The appointment of an administrator by the clerk of a county court, the record of which shows such appointment to have been made in his office in the regular way, and which was reported to the county court at its next regular session after the appointment was made, and by it regularly confirmed, cannot be questioned in a suit brought by such administrator upon a cause of action belonging to the estate of his decedent, upon the ground that such appointment was not made at the clerk's office, but at a point in the country distant therefrom. (p. 593).

5. DEATH—*Actions—Evidence—Pecuniary Condition of Deceased.*

In a suit by a personal 'representative to recover damages for the death of his decedent caused by the defendant's negligence, evidence that the deceased party owned property, and of incumbranches thereon, is not admissible.   (p. 597).

6. TRIAL—*Objection to Evidence—Waiver by Offer of Similar Evidence.*

An objection to the admission of irrelevant evidence is waived where the objecting party introduced evidence of the same character· and to the same point as that to which such objection was made.   (p. 597).

7. APPEAL AND ERROR—*Review—Harmless Error—Admission of Evidence.*

A judgment will not be reversed because of the admission of improper or irrelevant evidence when it is clear that the verdict of the jury could not have been affected thereby.   (p. 597).

8. SAME.

A judgment will not be reversed because of the admission of improper or irrelevant evidence tending to prove a material fact in the case, where such fact is shown by competent evidence and is not controverted by the opposing party.   (p. 597).

9. EVIDENCE—*"Res Gestae"—Admissibility.*

Whenever a statement is made by one under such circumstances as that it may be regarded as the result of an injury which has been inflicted upon him, or the result of a transaction in which he is engaged, it becomes part of the transaction itself, and if proof of the fact is material to the inquiry being made, such statement will be received in evidence as tending to establish such fact.   (p. 598).

10. SAME—*"Res Gestae"—Statement on Recovering Consciousness.*

The statements of an injured party who has been rendered unconscious from a blow, immediately upon regaining consciousness as to the object that hit him, are admissible in evidence as part of the *res gestae* where it appears that such statements are a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock from the blow.   (p. 598).

11. SAME—*"Res Gestae"—Acts.*

The actions of an injured party, such as his pointing at the object which he claims struck him, are proper to be shown by a witness to whom he made statements admissible in evidence, where such actions tend to illustrate and make such statements intelligible.   (p. 598).

12. PRIVATE ROADS—*Construction of Pipe Line—Obstructions—Liability.*

One constructing a pipe line across a road or way not a public

highway which to his knowledge is being used by the public as a highway, with the acquiesence of the owners of the land over which it runs, and the right of the public to use which is recognized by the party so laying said pipe line by making provision for preventing the obstruction of said road by said pipe line, is under the same obligation to construct and maintain such pipe line in a reasonably safe condition as though such road were a public highway.    (p. 601).

13.   NEGLIGENCE—*Condition of Premises—Use of by Invitee.*
      One using the premises of another by the owner's invitation has a right to assume that such premises are reasonably safe for the purpose for which he is invited thereon.    (p. 601).

14.   SAME—*Use of Premises—Injury to Invitee—Liability.*
      A company operating for oil, having a private road from the place of its operations to the public highway, which agrees to furnish to another for use at another place an appliance owned by it, such appliance to be removed by the party desiring its use, thereby extends an invitation to such other party to come upon its premises for the purpose of removing such appliance therefrom, and if in the removal of such appliance it be necessary to use such private road of the owner, and in the use thereof the party removing such appliance, or his servant, is injured because of the careless and negligent construction of a pipe line across said road by the owner thereof, such injured party may recover the damages sustained by reason of such injury from the party so negligently and carelessly maintaining such pipe line.   (p. 601).

15.   EVIDENCE—*Opinion Evidence—Admissibility.*
      The opinion of witnesses should never be received in evidence if all the facts can be ascertained and made intelligible to the jury, or if they are such as men in general are capable of comprehending and understanding.    (p. 603).

16.   SAME—*Opinion Evidence—Admissibility—Necessity.*
      When, however, it clearly appears that it is impossible to present the facts to the jury with the same force and clearness as they appeared to the observer, it is competent for the witness to give to the jury the impression which his observation made upon his mind at the time.    (p. 603).

17.   NEGLEGENCE—*Common Agency—Liability.*        •
      If the concurrent negligence of two or more persons combined results in an injury to a third person he may recover from either or all.    (p. 606).

18.   SAME.
      Where two parties use a common agency in the conduct of their business they are both liable to a third party injured by the

negligent or careless construction and maintenance of such agency, even though such agency is owned by only one of such parties. (p. 606).

Error to Circuit Court, Roane County.

Action by Samuel Starcher, as administrator of Oliver Norman, deceased, against South Penn Oil Company and United Fuel Gas Company. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*A. B. Fleming, Charles Powell* and *Kemble White,* for plaintiff in error, South Penn Oil Co.

*R. G. Altizer* and *C. C. Douthitt,* for plaintiff in error United Fuel Gas Co.

*Ryan & Boggess* and *Pendleton, Mathews & Bell,* for defendant in error.

RITZ, JUDGE:

In a suit by the plaintiff as administrator of the estate of Oliver Norman, deceased, to recover from the defendants South Penn Oil Company and United Fuel Gas Company damages for the death of his decedent caused by the alleged negligence of the defendants, a verdict and judgment were rendered in favor of the plaintiff, from which this writ of error is prosecuted.

It appears that there was a road running up what is called Big Run. This was not a public highway as is shown by the record, but it was a way that had been used for many years by a considerable number of people living up this run, and also by people living on the other side of the ridge. It was likewise used by the mail carriers in the performance of their duties, and it seems clear from the evidence that for many years it had been used by all who had occasion to do so without objection on the part of the owners of the property through which the same ran. The defendant South Penn Oil Company was operating for oil in this territory. The defendant United Fuel Gas Company had a gas well in the same territory, and the defendant Oil Company was procuring gas from this well to be used in its operations for oil. In

order to convey the gas from the well to the place where it was needed the defendant oil company constructed a two-inch pipe line running down Big Run, across the same, and extending to the point at which it was operating. At the point where this pipe line crossed Big Run the road above referred to ran in the bed of the creek, so that when the pipe line crossed the creek it also crossed the road. In addition to the uses which were made of this pipe line by the South Penn Oil Company, the defendant United Fuel Gas Company. also furnished gas through it to a number of its patrons situate along the line. This pipe line was laid on the surface of the ground, and at the place where it crossed the road running up the creek aforesaid, it appears that the bed of the creek was some two or three feet below the surface of the ground. The pipe line was not laid straight across the creek, but was conducted down the side of the bank, across the bed of the creek upon the bottom thereof, and up the bank on the other side to the natural surface of the ground, so as not to block the roadway running up the creek. It is shown that the pressure of gas in this line was ordinarily about four hundred pounds to the square inch. At the point where this pipe line crossed the creek people having occasion to use the road passed over the pipe line. It further appears that the defendant South Penn Oil Company obtained from the owners of the land a grant of the right of way for this pipe line, and that it also obtained from the owners of the land a grant of the right of way for a road up the creek, being the right to use the road above referred to. On the day of Norman's injury the Hope Natural Gas Company procured from the defendant South Penn Oil Company an appliance to be used by it in its operations in another county, and employed Norman to remove this appliance from the point where it then was to the place where it intended to use it. In order to effect this removal it was necessary for the plaintiff's decedent to go up this road in the creek for the purpose of procuring the appliance and bring it down the creek to the main road or highway. For this purpose he took two yoke of oxen belonging to him, and it is shown that just before the accident which resulted in his death he was proceeding up the creek

a very short distance from where the pipe line crossed it, with the oxen in front of him and a chain dragging behind them on the ground. Shortly thereafter witnesses who saw the plaintiff's decedent going up the creek as above stated, heard a loud report as from an explosion, and saw dust thrown up near the point where he had last been seen. On going to this point they found that one of the connections of this pipe line at the point where it crossed the creek had broken, and that plaintiff's decedent had been knocked down from some cause and was lying unconscious near this cross-ing. The oxen were proceeding on up the road having crossed the pipe line. This pipe line crossed the creek prac-tically at a right angle to the line coming down the run. After this explosion it was found that the part which extend-ed across the creek at a right angle to the line with which it connected on the bank had been straightened out so that the disconnected ends of the line were at a distance of about eight to ten feet from each other. The theory of the plaintiff is that when his decedent was crossing this pipe line, because the same was insufficient to withstand the pressure of the gas therrein it was broken loose at the connection on one side of the creek, and when the line became so disconnected the pres-sure of the gas straightened it out, and in doing so the pipe hit the plaintiff in the back knocking him unconscious, and inflicting a wound from which he subsequently died. The defendants' theory is that a hook on the chain which was fastened to the cattle being driven by the plaintiff's deced-ent caught on this pipe and that it was pulled apart in that way. After plaintiff's decedent regained consciousness he was carried to a nearby residence and a doctor immediately called. An examination by the doctor disclosed a wound on the back of the injured man about fifteen inches long, the bruise ex-tending to and crushing and dislocating two of the vertebrae. The plaintiff's decedent died in a very short time as a result of this wound. The plaintiff in this suit claims that the de-fendants were negligent in maintaining this pipe line across this road in the condition that it then was, that is, lying upon the surface of the ground exposed to contact from wagons or other things passing over it. It is also contended that the

pipe line was negligently constructed out of old and insufficient material, and that the defendant did not use reasonable care in maintaining the same after it was constructed.

Upon the trial of the case, after the plaintiff had concluded his testimony, the defendants asked leave to file a plea denying that plaintiff was the administrator of Oliver Norman. Accompanying this plea affidavits were filed showing that the matter set up in the plea had just been discovered. This plea alleged that the plaintiff was appointed as administrator of the estate of Oliver Norman, deceased, at a point about nineteen miles from the courthouse; that the clerk of the county court, at the request of the widow of Oliver Norman, went to this point and there met the parties interested, appointed the plaintiff administrator, took his bond, administered the oath to him, and appointed appraisers of the estate. He then sent the papers to his office at the county seat and they were entered upon the record by his deputy as though the appointment had been made in the office. It is alleged that because of this fact there was no appointment of the plaintiff as administrator, and that he cannot for that reason maintain this suit. The circuit court refused to allow this plea to be filed but permitted the defendants to introduce their evidence under it, upon the theory that it was a matter provable under the issue of not guilty. The facts as above stated in the plea were proved by witnesses. It was also shown that after this appointment was made as aforesaid, the county court at a regular session confirmed the same. Can this appointment of the plaintiff as administrator be attacked collaterally as is sought to be done in this case? General jurisdiction over the appointment and qualification of personal representatives is by the Constitution (Art. 8, § 24) vested in the county court, and further provision is made in the Constitution for the legislature making provision by law for the appointment and qualification of such personal representatives in the recess of the regular sessions of the county court. Under the authority of this provision of the Constitution the legislature has provided that the clerk of the county court during the recess of the regular sessions of such court may appoint such personal representatives, and provides that after they are so

appointed and qualified such appointment shall be reported to the county court at its next regular session, and if no objection be made thereto the same shall be confirmed, but if such appointment is objected to the court shall hear the objection and determine the matter the same as if the application had been originally made to the said court. It will be seen from these provisions that the county courts of the several counties in this state are vested with general jurisdiction for the appointment and qualification of personal representatives, and that the clerk during the vacation of the court has the like general jurisdiction to provisionally appoint and accept the qualification of such personal representatives subject to confirmation by the county court at its next regular session. Conceding for the sake of this argument that the clerk of the county court is required to perform this duty in his office at the courthouse, how may advantage be taken of his failure in that regard? Can it be done in any other way than by a direct proceeding to attack the appointment either by appeal, or some other appropriate form of direct attack? In this case the record on its face is regular and shows the proper appointment and qualification of the plaintiff as administrator of Oliver Norman. Can that record be set aside by a collateral attack in a suit for an entirely different purpose? Ordinarily, where a court has general jurisdiction of a subject-matter, and its records show the proper exercise of that jurisdiction, such records are conclusive except in a proper proceeding attacking their validity. 11 R. C. L. pp. 77-78. If the right of one exercising the powers of a personal representative under an appointment regular on its face could be questioned in every proceeding brought by him, it would result in much confusion, and in many cases we might have a court holding that for a particular case in which the administrator had sued he was not an administrator, and in another case in which he had sued, the defendant not desiring to raise the question, his acts as administrator would be taken as valid, and he would be held to be administrator. Such a result is not to be desired, nor will this court lay down a rule which would have that effect, unless there are imperative reasons therefor. None such are perceived. On the

other hand, it seems to us that both upon the ground of reason and sound public policy it must be held that where the record of the county court shows the appointment of an administrator in the regular way such appointment and such record cannot be attacked collaterally. It must be attacked in a suit brought for that purpose or by appeal from the order of his appointment, so that it will be determined once for all whether he is or whether he is not such administrator, and the character of all his acts as such will be at once fixed and determined, and not leave this important and vital question to be determined in each particular suit which it may be necessary for the administrator to bring to vindicate the rights of his decedent's estate. While there are some authorities which hold that lack of jurisdiction of the court appointing an administrator may be shown collaterally, we find the great weight of authority to be that such cannot be done. An examination of these authorities will also show that to a large extent those cases in which it is held that the jurisdiction may be attacked in a collateral way are in states where the court did not have general jurisdiction to appoint administrators. It may be true that where the power of the court to appoint and qualify personal representatives is limited in its extent, an exercise of this power beyond the limitations conferred could be taken advantage of at any time, but this is not the case where the power over the subject-matter is general. See 11 R. C. L. pp. 77-78, where the question is discussed, and the authorities cited. In a note to the case of *Jordan* v. *Chicago & Northewestern Ry. Co.*, 125 Wis. 581, reported in 4 Ann. Cases 1113, the authorities are collected, and they fully support the above conclusion. In *Cicerello* v. *C. & O. Ry. Co.*, 65 W. Va. 439, it was held that while under the laws of this state a non resident cannot be appointed administrator, still if such non resident was appointed as administrator such appointment could not be questioned collaterally. The theory upon which it proceeds is that before a court of general jurisdiction proceeds to act it determines the question of jurisdiction; it finds the facts upon which the jurisdiction is based, and its findings in this regard are no more subject to collateral attack than any other of its find-

ings. So, here, when the court confirmed and approved the . appointment of the plaintiff as administrator of Oliver Norman, it ascertained and determined that the clerk in making the appointment acted in accordance with the provisions of law, and its ascertainment of this fact cannot be questioned collaterally any more than any other finding of fact which it had to make in order to determine that it had jurisdiction to make the appointment. So in *Allen, Admx.* v. *Linger,* 78 W. Va. 277, it was held that while the statute forbids the appointment of a marired woman as a personal representative, still if a married woman was in fact appointed as such and entered upon her duties, her appointment could not be collaterally questioned. In the above cases it appears to us that the reason for questioning the appointments in a collateral proceeding was very much stronger than exists in this case. There the county court had appointed persons as administrators who were expressly declared by statute not to be eligible for appointment, still the court proceeded upon the theory, and it is a correct theory, that the county court before making those appointments found that the jurisdiction did exist, and that the persons were proper persons to be appointed, and this finding, however erroneous or however contrary to the fact, cannot be questioned in a collateral proceeding. In the case of *Fisher* v. *Bassett,* 9. Leigh 119, the Supreme Court of Appeals of Virginia held that where a county court had appointed an administrator for a non resident who had no property in the jurisdiction, in violation of the law, such appointment could not be attacked collaterally; that the judgment of the county court appointing that administrator imports verity until it is set aside in a direct proceeding brought for the purpose. This conclusion was followed in the case of *Andrews* v. *Avory,* 14 Gratt. 229. We conclude that it was not competent for the defendants to question the appointment of the plaintiff as administrator in this collateral way. Where the record shows his due appointment it will be conclusively presumed in all proceedings except those brought for the direct purpose of attacking such appointment that the court had jurisdiction, and that all of the requisites existed in order to make the appointment

a proper and valid one. Whether or not the plaintiff's appointment as administrator could be set aside for the reasons set up in the plea in a direct proceeding, we do not decide.

The defendants assign as error the action of the court below in permitting the widow of the decedent to testify that he owned a small farm, but that the same was not paid for, and that on that account he scarcely considered that he owned it. The case of *Sesler* v. *Coal Co.*, 51 W. Va. 318, is cited as condemning this character of evidence. In that case Sesler was suing to recover for injuries to himself, and he was permitted to prove that he had a family, and the number of his children. The court held that this was error, and it may be said that in cases of this character the financial status of plaintiff's decedent is not an element for proper consideration by the jury. In fact plaintiff's counsel concedes this to be the law, but they say that this evidence could not have affected the verdict of the jury, and even if it were such error as would require a reversal, it was waived by the defendants themselves by proving by a witness on cross examination that plaintiff's decedent was the owner of this farm referred to by his widow. It is true on cross examination the defendants proved by a witness that plaintiff's decedent did own the 65 acres of land referred to by his widow on her examination. We are of the opinion that it was improper to be proved by either party, but inasmuch as the defendants offered evidence of the fact upon cross examination of one of the witnesses, can they complain that the court permitted another witness to testify to the same thing, even conceding that it might be prejudicial? It is hard to conceive in this case how this immaterial statement could have affected the jury's verdict, but even if it did we are of the opinion that any error of the court in admitting this evidence when offered by the plaintiff was waived by its admission upon the defendants' offer thereof. *Merrill* v. *Torpedo Co.*, 79 W. Va. 669, 92 S. E. 112; *C. & O. Ry. Co.* v. *Barger*, 112 Va. 688.

The action of the court in permitting a witness to testify that the two-inch gas line was a high pressure line, and that he got his information as to that from an employe of one of the defendants, is assigned as error. It is true that this evi-

dence is hearsay, and is subject to condemnation for that reason. It should not have been admitted, but we can plainly see that it did not cloud the issue, inasmuch as this question of whether or not this pipe line was a high pressure line was not a controverted one. The witnesses introduced by the defendants proved this very much more satisfactorily than any evidence offered by the plaintiff. The defendants' witnesses who know anything about it show that it was what is known as a high pressure line, and that it carried a pressure approximating four hundred pounds to the square inch. The statement made by this witness shows that he knew nothing about it himself, and that he was only testifying from what another party told him. If this was a matter in controversy the admission of such evidence would perhaps call for a reversal of the judgment. While it was important in the case to show that this pipe line carried a high pressure of gas, still it appears from the evidence offered by the defendants that this was the fact, and no witness disputes it, nor is there any effort made by the defendants to controvert it. We think it may be safely said that it clearly appears in this case that the admission of this improper evidence could not have prejudiced the defendants, and does not therefore require a reversal of the judgment. *Davis* v. *Living,* 50 W. Va. 431; *Lovern & Brown Co.* v. *Bumgarner,* 59 W. Va. 46.

On the trial of the case the plaintiff introduced a witness, Lucy Board, who said that she was the first person to reach the plaintiff's decedent after his injury. She testified that when she reached him he was unconscious; that after rubbing his face and the back of his head with her apron which she had moistened in the creek nearby he regained consciousness; that immediately upon regaining consciousness he exclaimed, "Oh, God, do I have to die." The witness thereupon asked him if he knew what hurt him, to which he answered, "That hurt me, it struck me in the back." Then the witness commented in her answer that it was the pipe line, "nothing but it lay there, he pointed his hand right at the pipe line and I know it was it." Admission of this statement is urged as ground for reversal for two reasons: first, because it contains a statement of the opinion of the witness that it was the pipe

line that caused the injury; and second, because it detailed
to the jury hearsay evidence. We do not think there is any
merit in the first contention that the witness was giving her
opinion about what hurt the injured man. Reading her whole
statement together, it is clear that what she says is that she
knows that what the injured man meant to say hurt him was
the pipe line because he pointed at the pipe line, and that
was the only thing that was there. This is the only reasonable
construction the jury could give to this language. The wit-
ness shows that she does not know herself what hurt the in-
jured man, and she is not undertaking to do anything in this
answer except to interpret the statements he made in the
light of his action in pointing at the pipe line. There was no
impropriety in this. There is no reason why a witness may
not detail the physical surroundings in order to make intel-
ligible the testimony which he is giving. But is this state-
ment of the injured man admissible as part of the *res gestae?*
It will be observed that he made this statement immediately
upon recovering consciousness in answer to an inquiry as to
what caused his injury. He had had no opportunity to for-
mulate any story, and his exclamation seems to have been a
spontaneous outburst in answer to the most natural inquiry
that would come to the witness under the circumstances. The
general rule of course excludes the introduction of hearsay
evidence, but there is a well recognized exception to this rule
in the case of statements which are treated by the courts as
parts of the main transaction, which are presumed to be ut-
tered by the party making them while still under the influ-
ence of the particular transaction sought to be proven. This
doctrine has been applied to statements made by an injured
party, either during the affray in which he was injured, or
so soon thereafter that it will be presumed that his nervous
forces had not fully recovered from the shock produced by
the injury. In Wigmore on Evidence, § 1747, the author de-
fines this exception to the rule in what we conceive to be very
apt language, as follows: ''This general principle is based
on the experience that, under certain external circumstances
of physical shock, a stress of nervous excitement may be pro-
duced which stills the reflective faculties and removes their

control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts." In Jones on Evidence, beginning at § 344, the author discusses this doctrine of *res gestae,* and lays down very nearly the same rule as that quoted above from Wigmore. He says: "The declarations are admitted when they appear to have been made under the immediate influence of some principal transaction, relevant to the issue, and are so connected with it as to characterize or explain it. It should appear that they were made without premeditation or artifice, and without a view to the consequences; that they are the *spontaneous utterances,* the natural result of the act they characterize or elucidate. Of course, the act must be relevant to the issue, but when relevant, the declarations are not rejected merely because there may be other competent testimony. It is hardly necessary to add that when the declarations form part of a contract or the performance of a contract, they are relevant and will be received. In the celebrated case in which Lord George Gordon was on trial for treason, the cries of the mob which accompanied the defendant during the acts complained of were received for the purpose of showing that his intentions were unlawful and treasonable. On the same principle, the complaints and statements of an injured party made at the time of the occurrence both as to bodily suffering and the circumstances of the occurrence are frequently received." Authorities could be cited without number illustrating instances in which courts have admitted such declarations as part of the *res gestae,* that is, part of the thing itself, but it would serve no useful purpose to extend the discussion by a citation of these authorities. It

is sufficient to say that whenever a statement is made by one under such circumstances as that it may be regarded as the result of an injury which had been inflicted upon him, or as the result of a transaction in which he is engaged, it becomes a part of the transaction itself, and if proof of the fact is material to the inquiry being made such statement may be received in evidence as tending to establish the fact so sought to be proven. This declaration, it seems to us, comes clearly within the rule permitting the introduction of such declarations as part of the *res gestae*. It was made by the injured man immediately upon recovering from his unconscious condition caused by the blow which he had received. The circumstances under which it was made show that it was the result of the mental condition caused by the injury which had been inflicted upon him, and not as the result of premeditation or artifice.

The action of the court in allowing a witness to testify that this road which was being used by plaintiff's decedent at the time he received the injury resulting in his death was used by the public as a highway, is assigned as error. It is conceded that this road was not a public highway, but that it was used by people living along this creek and those on the other side of the mountain, as they had occasion to use it, and had been so used for many, many years, is undisputed. It was used by the mail carrier in the performance of his duties. That the defendants recognized this road as one that was being used is shown by the fact that when they reached this branch up which the road ran with this pipe line, instead of extending it straight across from one bank to the other, they bent it down and made it conform to the convolutions in the ground caused by the erosion of the water in the creek, so that the people using the road could go over it. The use of the road by the public was so general that the defendants could not but know it, and this action of theirs shows that they did know it and recognized it. In *Schoonover* v. *R. R. Co.*, 69 W. Va. 560, it is held that where a railroad company recognizes a place as a crossing, even though it is not a public crossing, it is under the same obligation to parties using such crossing as though it were a public crossing. A like holding

was made in the case of *Melton* v. *C. & O. Ry. Co.*, 71 W. Va. 701. It is clear from the evidence in this case that every one, including the land owners, recognized the right of people generally to use this road as a pass way to the same extent as if it had been a public highway, and the defendants knowing of its use for this purpose, as is shown by their acts as aforesaid, were under the same obligation to the people using it as though it had been a public highway.

There is another reason why the defendant South Penn Oil Company was under a duty to the plaintiff's decedent in regard to the use of this road on the occasion of his injury. On that occasion he was going upon the premises of the defendant oil company to secure for the Hope Natural Gas Company an appliance which the oil company was to furnish to the gas company. The oil company had acquired the right to use this road itself; it notified the gas company to come upon its premises and get this appliance. The only proper way to do so was to use this road. The gas company was invited by the oil company to do so, and this invitation extended to the agent used by the gas company for securing the appliance desired. It is well established that where one invites another to come upon his premises for a lawful purpose he is liable to that other for any injury that he receives by reason of the unsafe condition of those premises. Plaintiff's decedent in this case was in very little different position from the plaintiff in the case of *Smith* v. *Parkersburg Co-operative Ass'n.*, 48 W. Va. 232. In that case the plaintiff, a customer of the defendant, went upon the defendant's premises to make some purchases, and while going to a part of the store to inspect some goods which she contemplated purchasing fell into an open elevator shaft. It was held that plaintiff was there by the invitation of the defendant and had a right to rely upon the premises being safe. So here the defendant oil company was to furnish to the Hope Natural Gas Company a certain appliance needed by it and invited the said gas company to come upon its premises and get this appliance. The gas company used the plaintiff's decedent as its agent for this purpose. This invitation implied that the premises would be reasonably safe, at least for the purpose of removing the ap-

pliance.  It is shown that it was necessary to use this road
for that purpose, and under the circumstances .it cannot be
successfully contended that plaintiff's decedent was not upon
these premises at the invitation of said oil company, and had
a right to consider that the road would be reasonably safe
for travel.   See also *Smith* v. *Sunday Creek Company,* 74
W. Va. 606; *Reilly* v. *Nicoll,* 72 W. Va. 189.

A witness was permitted to testify that in passing over this
road with his wagon he placed rocks on either side of this
pipe in order that his wagon wheels might go over it without
coming in contact with the pipe, and he was allowed to say
that in his opinion the pipe was not safe, stating that he
would not have taken this precaution had he believed it was
safe.  This is assigned as error.  It is claimed that the opin-
ion of this witness was improper evidence.   Ordinarily the
opinion of a non expert upon a question where the facts and
the appearances can be presented to the jury fully and clearly
is inadmissible.  The plaintiff's counsel admit that this tes-
timony was improper and should not have been admitted, but
they claim its admission could have resulted in no injury
to the defendants.  We cannot quite agree with this con-
clusion.  There is a class of cases in which, from the nature
of the transaction sought to be shown, it is impossible to pre-
sent to the jury the situation just as it was presented to the
witness, in which class of cases the witness is permitted to
give his opinion based upon what he has seen and the presen-
tation made to him at the time.  It might very well be said
that it would be quite impossible for this witness to present
to the jury a mental picture of the things which entered into
consideration by him in coming to the conclusion that he
should not attempt to go over this pipe without protecting it
by rocks on either side to prevent the contact of his wagon
wheels with it. Opinions of non expert witnesses were justified
upon this ground in the cases of *Kunst* v. *City of Grafton,* 67
W. Va. 20; *Walker* v. *Strosnider,* 67 W. Va. 39; *Findley* v. *Ry
Co.,* 72 W. Va. 268; *Overby* v. *Ry. Co.,* 37 W. Va. 525.
Whether this evidence falls within the rule which admits
opinions of non expert witnesses under circumstances such
as have been mentioned above we need not say in this case,

for the reason that the question to which the evidence was directed was whether or not this pipe crossing the road was safe. It is shown by the evidence in this case that this pipe became disconnected or broken at this point on one or two occasions previous to this time; it is shown that it carried a high pressure of gas; it is shown that at times the earth was washed out from under it in the bed of the creek, which was also the road bed, and that the pipe was suspended from the banks of the creek. No reasonable person could come to any conclusion but that it was negligence to maintain this pipe in such condition. The defendants were bound to know that this pipe, if it became disconnected or broken, would likely cause severe damage to anyone near to the point where such breakage occurred; they were bound to know that a pipe laid under this condition, sometimes on the bottom of the creek and sometimes suspended, was likely to become broken or disconnected by wagons passing over it, or by coming in contact with vehicles or other things which had the right to use this road, and we hold as matter of law that it was negligence for the defendants to maintain this pipe across this road in the condition that it is shown to have been, so that the opinion of this witness, even though it was not competent evidence, could not have in any way prejudiced the defendants. *Reilly* v. *Nicoll*, 72 W. Va. 189.

What we have said in regard to this also applies as to the admission in evidence of the franchise granted to the defendant United Fuel Gas Company by the county court of Roane county. This was improper evidence. It had no business in the case, but inasmuch as its only tendency was to prove that it was negligence to maintain this pipe on top of the ground, across a road which a large number of people had a right to use, which we find to be negligence as matter of law, its admission in no wise prejudiced the defendants.

The action of the court in giving to the jury certain instructions offered by the plaintiff, and in refusing to give certain instructions offered by the defendants is complained of. The instructions given on behalf of the plaintiff correctly state propositions of law when read together, and were properly given, if the facts proven justified the submis-

sion of the case to the jury for their determination. The instructions offered by the defendants which were refused were all in effect peremptory, and were properly refused, unless the evidence did not disclose a case to go to the jury. The defendants contend that the evidence indicates that the pipe was broken by the chain fastened to the oxen driven by plaintiff's intestate becoming hooked around it, and being dragged out in that way, and that this appears from the fact that the hook on the end of the chain is shown to have been bent back and nearly straightened out. A witness for the plaintiff testifies, however, that he used this identical chain just a short time before the accident in removing a boiler, and that this hook was straightened out in doing that work; that he examined the chain again on the morning after the accident, and that the hook was then in the same condition that it was after they had moved the boiler with this chain. The jury was very carefully instructed that if they believed from the evidence that the pipe was broken in that manner, there could be no recovery. They were also instructed that in order to a recovery the accident must have happened because of the pipe being insufficient to support the strain placed upon it by the pressure of gas within it, and that in order to such recovery Norman's acts must have in no wise contributed thereto. The defense made by the defendants is upon two theories: first, that this not being a public highway, they owed no duty to the plaintiff; and second, that from the evidence it is just as likely that the pipe was broken by the agency of the plaintiff's decedent as it was from any other cause. We have heretofore disposed of the first contention. If it had appeared in this case that after the accident the hook on the end of the chain fastened to the oxen was bent, and this had not been explained, then there would be strong reason for saying that the breaking of the pipe as likely resulted from this cause as from any other, but when the condition of this hook is explained by the witness we cannot say that the jury were not justified in coming to the conclusion that this pipe broke as a result of the negligence of the defendants in maintaining it across this road in the condition in which it was, under the pressure of gas that it contained.

81 W. Va.

The defendant United Fuel Gas Company contends that it is not liable even though the South Penn Oil Company may be. It is true it did not own the pipe, it did not maintain the pipe, but it is also shown in this case without contradiction that this pipe line was one of the agencies used by the United Fuel Gas Company in supplying gas to certain of its customers. It was supplying this gas, not only to the South Penn Oil Company, but it had a number of other customers who lived along this pipe line to whom it sold gas delivered to them through this pipe line. Can it be said that it was under no duty to see that the agencies that it used in the conduct of its business were kept in a reasonably safe condition? The fact that it did not own the pipe line can make no difference. It was one of its instrumentalities, and it was under a duty to see that this instrumentality was in a reasonably safe condition before it began the use of it for the purpose of furnishing gas to its customers, and thereafter to see that it was maintained in that reasonably safe condition. *Hains* v. *Ry. Co.*, 71 W. Va. 453; *Hains* v. *Ry. Co.* 75 W. Va. 613; 29 Cyc. 487; *Johnson* v. *Chapman*, 43 W. Va. 639. In 29 Cyc. p. 487, it is said: ''If the concurrent negligence of two or more persons combined together results in an injury to a third person he may recover from either or all. And in determining the liability of either of two persons whose concurrent negligence results in injury, the comparative degrees of negligence are not to be considered, each being liable for the whole even though the other was equally culpable, or contributed in a greater degree to the injury, or the proportion in which the negligence of each contributed to the injury, or the degrees of care used, is not to be considered. And where the negligent conduct of several at the same time and place combined in causing an injury, they acting in concert, all are liable, although they did not conduct themselves negligently by preconcert. So where the injury is the result of the neglect to perform a common duty resting on two or more persons, although there may be no concert of action between them, they may be sued jointly. Nevertheless in order to create a joint liability for an injury the negligent acts of the parties sought to be charged must have concurred in

producing it.''   Thompson on Negligence, §§ 7435, etc.; *Simmons* v. *Everson*, 124 N. Y. 319.

We conclude from the foregoing authorities that the plaintiff in this case could maintain his suit against either or both of the defendants under the finding of the jury that the negligent maintenance of this pipe line across this road was the proximate cause of the injury which resulted in the death of plaintiff's decedent.

Finding no error in the judgment of the circuit court of Roane county, the same will be affirmed.

*Affirmed.*