# $\mathfrak{S}$taunton

R. P. OPPENHEIMER v. M. A. LINKOUS' ADMINISTRATRIX.

September 22, 1932.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*W. J. Henson,* for the plaintiff in error.

*Howard C. Gilmer,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

M. A. Linkous' administratrix seeks to recover damages for the death of her decedent growing out of an automobile accident. She charged that W. B. Smoot and Dr. R. P. Oppenheimer were jointly and severally liable. The jury returned this verdict:

"We, the jury, find a verdict in favor of the plaintiff for the sum of ten thousand ($10,000) dollars against the defendants." It was confirmed by the court which entered this order:

"It is therefore considered by the court that the plaintiff, Lola M. Linkous, administratrix of M. A. Linkous, deceased, recover against the defendants, W. B. Smoot and R. P. Oppenheimer, jointly and severally the said sum of $10,000 with legal interest thereon from this date, until paid, and her costs in this behalf expended."

Smoot is not complaining, but Dr. Oppenheimer applied for and has obtained a writ of error.

The Lee highway enters the town of Dublin from the west and in it turns at right angles to the right. At the point of turning it intersects Giles turnpike, coming from the north,

and runs with it to the south. Projected it would cross that turnpike and pass into Church street. Its northern line projected would pass a little south of the north line of Church street and its south line projected would pass south of that street. Four hundred and forty-seven feet west of the Giles turnpike, on the highway, is Cecil's filling station, and west of it is a small hill. The pavement on the highway is twenty feet wide; the highway itself is about forty-eight feet wide; the pavement on Church street is fourteen feet wide, and the street itself about twenty-two feet wide. One entering Church street from the highway must in crossing the turnpike bear to the left. Along the highway as it approaches the town are these signs: "Twenty-five Miles," "Slow Down," "Cross Road," "Junction." The main body of the town lies to the right, but a part of it is straight ahead and can be plainly seen.

Smoot drove a Pierce Arrow automobile, and with him rode a companion, Pearman. Oppenheimer's car, a new Cadillac, was driven by his chauffeur, Workmond, by whom the owner sat.

On the afternoon of May 15, 1931, these two cars on this highway were approaching Dublin. As they came over a small hill west of the Cecil filling station, Oppenheimer's car was ahead, traveling at about thirty-five miles an hour. Smoot's car followed close behind, going about forty miles an hour. Smoot blew for the road. Oppenheimer's car did not yield but its chauffeur, by his own statement, "gave my car more gas, pulled to the right of the road and went on down the Lee highway." When they passed the filling station they were going at an estimated speed of fifty or fifty-five miles an hour and were running abreast. Cecil, who saw the situation, involuntarily exclaimed, "Look out, there is a wreck!" "The cars are racing." Oppenheimer, who was relaxed and probably dozing, became conscious of the situation and told his driver to slow up, but that caution was not obeyed. These cars continued on at a speed estimated by some witnesses to be seventy miles an hour. One

said they were running faster than he had ever seen a car run before and at times were not more than six inches apart. The Cadillac pulled slightly ahead. As they reached the turnpike it was necessary for them to bear to the left in order to enter Church street which was not head on and which was, as we have seen, somewhat to the north. They may have been momentarily in contact. The left rear bumper of the Cadillac was probably struck by the Pierce Arrow. As they turned into Church street evidence for Oppenheimer shows that his car held to the right but there is evidence also to show that, as it bore to the left in order to enter Church street, it bore so far to the left that it crowded the Cadillac car and in turn forced it further to the left than it migĥt otherwise have gone. The Pierce Arrow car struck Linkous who stood near the side of the road, inflicting injuries from which he died.

■ Reckless driving on public highways is prohibited by statute—Code, section 2145 (4), (a)—and the driver of a car about to be overtaken must, upon signal, give way, and must not increase the speed of his car until completely passed by the overtaking vehicle—Code, section 2145 (15); and so this chauffeur, when signalled, should have yielded the road to the following car, but as man of mettle it ill became him to be passed by a mere Pierce Arrow and a 1926 model at that. He turned on more gas and went hurtling down the road and into town at a speed increased and reckless. It is difficult to dispassionately characterize his conduct. That these two cars were racing is too plain for argument. They were joint tort-feasors and are jointly and severally liable.

"Where two or more are unlawfully or negligently racing horses on a street and one injures a traveler, they are jointly and severally liable." 1 Cooley on Torts (3d ed.), p. 249. *De Carvalho* v. *Brunner*, 223 N. Y. 284, 119 N. E. 563.

■ Highways are not race courses and to so use them is a public peril.

In *Brown* v. *Thayer,* 212 Mass. 392, 99 N. E. 237, 239, the court said: "Our public ways are not designed or maintained as thoroughfares for racing automobiles, and those who use them for this purpose do so at their peril. * * * The principle is settled by our decisions that, where two or more tort-feasors by concurrent acts of negligence which although disconnected yet in combination inflict injury, the plaintiff may sue them jointly or severally, although he can have but one satisfaction in damages."

To the same effect is *Price* v. *Burton,* 155 Va. 229, 154 S. E. 499. Many other cases might be cited but these suffice.

■■ With these elementary propositions we are in cordial accord. Ordinarily it is for the jury to say if the acts complained of were such as were calculated to endanger the safety of foot passengers and if the defendants were acting in concert.

"It is for the jury to say, from all the circumstances in the case, whether the fast driving of the defendants' servants was of such character as to endanger the safety of foot passengers in the street, and whether it was an act done in concert, and if the jury found in the affirmative it was authorized to hold all the defendants liable." *De Carvalho* v. *Brunner, supra.* See, also, *Reader* v. *Ottis,* 147 Minn. 335, 180 N. W. 117, 16 A. L. R. 463.

In *Lavenstein* v. *Maile,* 146 Va. 789, 132 S. E. 844, 847, Judge Chinn cited with approval this proper statement of the law from *Starcher* v. *South Penn Oil Co.,* 81 W. Va. 587, 606, 95 S. E. 28, 35: " 'If the concurrent negligence of two or more persons combined together results in an injury to a third person, he may recover from either or all. And in determining the liability of either of two persons whose concurrent negligence results in injury, the comparative degrees of negligence are not to be considered, each being liable for the whole even though the other was equally culpable, or contributed in a greater degree to the injury, * * * or the degrees of care used, is not to be considered.

And where the negligent conduct of several at the same time and place combined in causing an injury, they acting in concert, all are liable, although they did not conduct themselves negligently by preconcert.' "

See also *Trauerman* v. *Oliver's Adm'r,* 125 Va. 458, 99 S. E. 647, where the court said that the question of common negligence was a jury question.

In the instant case the court did submit this question to the jury and told them that if the accident was due to Smoot alone "independently of any negligence on the part of Oppenheimer, they should find for Oppenheimer." It might well have held that Oppenheimer's negligence was too clearly established to make it a jury question.

For him it is said that "although his chauffeur was driving at an excessive rate of speed at the time of the accident, that his car kept on the right hand side of the road, did not strike or otherwise injure the plaintiff, that he was only violating the traffic laws, which violation was not the proximate cause of the injury."

It is true that where the violation of a statute bears no relation to the injury inflicted such violation is irrelevant. There must be some causal connection. *Virginian Railway Co.* v. *Haley,* 156 Va. 350, 157 S. E. 776, 784; *Wyatt* v. *C. & P. Tel. Co.,* 158 Va. 470, 163 S. E. 370.

If these men, however, had not been racing, Linkous would be alive to-day. His death is directly due to the failure of Oppenheimer's chauffeur to note the passing signal from the Smoot car. He saw fit to invite a race which was not only a proximate cause of the accident but the sole proximate cause. A child should have anticipated that some pedestrian might be struck in the street.

These two instructions were tendered and rejected:

(1) "The court instructs the jury that if they believe from the evidence that the car of the defendant, Smoot, approached the car of defendant, Oppenheimer, desiring to pass, and blew his horn as a signal to pass, but the defendant Oppenheimer sped up his car and proceeded to run same at

an illegal rate of speed, but kept to the right of the road, allowing room for the Smoot car to pass on the left, and did not injure the plaintiff's intestate, then the act of the defendant Oppenheimer, in speeding up his car and running at an illegal rate of speed is not negligence for which the defendant Oppenheimer can be found guilty."

(2) "The court instructs the jury that if they believe from the evidence that the car of defendant Smoot approached the car of defendant Openheimer, desiring to pass, and blew his.horn as a signal to pass, and defendant Oppenheimer sped up his car but kept to the right side of the road, allowing room for the defendant Smoot's car to pass on the left, and did not injure the plaintiff's intestate thereby, then the act of the defendant Oppenheimer in speeding up his said car instead of maintaining his former speed is not negligence for which the defendant Oppenheimer can be found guilty."

They are practically peremptory; they ignore the race and the crowding made necessary by the narrow roadway of Church street, and were properly rejected.

Finally it is said that a $10,000 verdict is excessive. It is within the limits of the statute. Decedent left a dependent wife and child, and so if this motion is to be sustained it must be because he was only earning about $600 a year, was sixty-nine years old and did not have long to live anyway. This is not enough.

"The settled rule is that as there is no legal measure of damages in cases involving personal injuries the verdict of the jury in such cases cannot be set aside as excessive unless it is made to appear that the jury has been actuated by prejudice, partiality or corruption, or that they have been misled by some mistaken view of the merits of the case." *Colonna Shipyard* v. *Dunn,* 151 Va. 740, 145 S. E. 342, 350.

The judgment of the trial court is plainly right and must be affirmed.

*Affirmed.*