STATE OF CONNECTICUT *v.* ROGER J. DIONNE

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 15-2859

STATE OF CONNECTICUT *v.* JOSEPH WALUK

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 15-2860

Argued June 1—decided September 11, 1962

*Francis C. Vignati,* of Hartford, for the appellant (defendant Dionne).

*Martin F. Stempien,* of New Britain, for the appellant (defendant Waluk).

*John F. Walsh,* assistant prosecuting attorney, for the appellee (state).

PRUYN, J. These two cases were tried together, and the defendant in each case was found guilty of racing in violation of § 14-224 (b) of the General

Statutes and has appealed, assigning as error the denial by the court of his motion to set aside the verdict on the ground that the verdict was not supported by the evidence and that the evidence did not prove him guilty beyond a reasonable doubt. The defendant in each case was found not guilty of speeding, with which he was charged in the same information.

It is to be noted that the appeal in each case is from the decision of the court denying the motion to set aside the verdict, and not from the judgment entered on the verdict. Proper procedure under the General Statutes and rules of practice requires the appeal to be taken from the judgment. General Statutes §§ 51-265, 54-95, 52-263; Practice Book § 377; Cir. Ct. Rule 7.51.1. Appeals to the Appellate Division of the Circuit Court lie from "any final judgment or action of the circuit court." § 51-265. The adjective "final" in this section modifies the word "action" as well as the word "judgment." *State* v. *Wilson,* 22 Conn. Sup. 345, 346. The denial of the motion to set aside the verdict is neither a final judgment nor a final action. However, this court has jurisdiction of the appeal. It is not void, but is merely voidable as defective in form. Unless a motion to dismiss is duly made, the defect is waived. *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 72; *Desmarais* v. *Pinto,* 147 Conn. 109, 110. No motion to dismiss having been made, we consider the appeal in each case on its merits.

This court, in reviewing the trial court's decision in denying the motion to set aside the verdict because of the insufficiency of the evidence, gives great weight to the action of the trial court; *State* v. *Hayes,* 127 Conn. 543, 554; *Caldwell* v. *Danforth,* 124 Conn. 468, 470; and makes every reasonable presumption in its favor. *State* v. *Bradley,* 134 Conn. 102, 109; *Dudas* v. *Ward Baking Co.,* 104

Conn. 516, 518. The court and the jury, having agreed, have had the advantage of hearing the testimony and seeing the witnesses, thus being able to evaluate the evidence firsthand. *State* v. *LaFountain,* 140 Conn. 613, 616; *McWilliams* v. *American Fidelity Co.,* 140 Conn. 572, 575; *Zullo* v. *Zullo,* 138 Conn. 712, 715. The trial court, in denying the motion, was acting in the exercise of a legal discretion, and its action must not be disturbed unless it is manifest that the discretion was abused. *Roma* v. *Thames River Specialties Co.,* 90 Conn. 18, 20. The question for us to consider is not whether on the evidence we would arrive at the same result as the jury but rather whether the conclusion reached by the jury is clearly unreasonable under all the circumstances and one which no jury could fairly and reasonably reach on the evidence. *Brooks' Appeal,* 68 Conn. 294, 296. "A verdict is not to be upheld or set aside by weighing the evidence and determining the credibility of witnesses, for this is the exclusive function of the jurymen themselves, and if they acted reasonably, their conclusion upon these points is final." *Canfield* v. *Sheketoff,* 104 Conn. 28, 30.

In the light of the conflicting evidence, the jury could reasonably have found, and must have found in order to reach their verdict, the following facts: The defendant Dionne on the evening of December 23, 1961, drove his automobile, with one Jones as a passenger, into the parking area of McDonald's Drive-In Restaurant on the Berlin turnpike (route 15), a public highway. It did not stop but came out onto the highway and turned right, heading west; as it came out of the driveway it came out slowly and then proceeded into the left westbound lane of this four-lane highway, coming to a stop. Immediately behind Dionne was the vehicle driven by the defendant Waluk, with one Castelli as a passenger;

it rolled almost to a stop and then proceeded on to the right-hand lane heading west, pulling up abreast of the Dionne car. Then both cars accelerated rapidly, almost from a stopped position, to speeds reaching an estimated sixty to sixty-five miles an hour. They were side by side until just before they reached Kitts Lane, when the Waluk car pulled slightly ahead. After passing Kitts Lane, they decelerated and stopped in response to the flashing light and siren of a police cruiser. The distance from where the two vehicles came out onto the highway to where they were stopped was five-tenths of a mile. The police officer did not clock the defendants.

Section 14-224 (b) of the General Statutes provides as follows: "No person shall operate a motor vehicle upon any public highway for a wager or for any race or for the purpose of making a speed record." Neither the matter of a wager nor the matter of a speed record is involved in the instant cases; the sole question is whether the defendants were operating their respective motor vehicles "for any race." As far as counsel and the court have been able to discover, the words "for any race" have never been defined by the courts of Connecticut. The Century Dictionary and Cyclopedia defines the word "race" as "a contest of speed; a competitive trial of speed." It is "a competition of speed, in running, skating, riding etc." Webster, New World Dictionary. In construing a statute to prohibit gambling on races, the Supreme Court of Tennessee stated: "The term ["race"] was used by the framer of the statute to accomplish a practical purpose and in a popular and well-defined sense; that is, in a sense which involves the idea of competitive locomotion. In other words, it here embraces every contest or trial of progression, including speed and endurance, one or both . . . ." *State* v. *Hayes,* 116 Tenn. 40, 44. Thus a trial of speed is necessary

to constitute a race. *Lockman* v. *Cobb,* 77 Ark. 279, 289; *Thomas* v. *Rasmussen,* 106 Neb. 442, 445. However, it does not necessarily follow, as the defendants argue, that because they were found not guilty of the crime of speeding they could not be found guilty of the crime of racing. While speed is an important factor in a race, the jury might well have concluded either that the speed at which the defendants were traveling when they were stopped by the police officer was reasonable under the circumstances specified in the statute or that, the only evidence as to their speed being an estimate by the police officer, there being no clock, the state had failed to prove beyond a reasonable doubt the speed at which they were going.

It is not necessary that there be some prior agreement or understanding or some prearrangement before there can be a race; there can be a race by total strangers on the spur of the moment. See *Reader* v. *Ottis,* 147 Minn. 335; *Oppenheimer* v. *Linkous,* 159 Va. 250. In the *Oppenheimer* case, the Virginia court said (p. 254): "[S]o this chauffeur, when signalled, should have yielded the road to the following car, but as man of mettle it ill became him to be passed by a mere Pierce Arrow and a 1926 model at that. He turned on more gas and went hurtling down the road at a speed increased and reckless. . . . That these two cars were racing is too plain for argument." The defendants' claim that the testimony of the defendants and their passengers clearly showed that each defendant and his passenger did not know, see or talk to the other defendant or his passenger beforehand and that the defendant Waluk did not notice the Dionne car until the cars were stopped by the police officer is without merit. It was the exclusive province of the jury to believe, disbelieve or give whatever credit it deemed justified to such testimony.

We cannot say that the conclusion reached by the jury in the cases at bar was unreasonable under all the circumstances.

There is no error.

In this opinion DEARINGTON and GEORGE, Js., concurred.