SAWAYA, C.J.
In this appeal from an adverse summary final judgment, the insurer calls upon us to determine the meaning of an exclusion clause in an insurance policy that the trial court found did not exclude coverage for the tragic boating incident that claimed the life of Ted Collinsworth and inflicted serious injuries on Robert Crockford. A salutation at the beginning of the marine insurance policy issued by Continental Insurance Company to Ted and his wife Dorothy warmly greets them with “Welcome Aboard! We are delighted that you are participating in the Boat U.S. Marine Insurance Program. The policy you are holding is designed by and especially for a recreational boater like you.” Toward the end of the policy, however, is the “Racing Exclusion,” which tells Ted and Dorothy that “[w]e will not cover powerboats while engaged in any speed race or test. We do cover predicted log cruises or similar competitions and sailboat racing.” The issue we must resolve is whether the provision “any speed race” is ambiguous and should be interpreted in favor of the insureds as excluding only officially organized and sanctioned powerboat races.
Ted and Robert, good friends and companions, each purchased powerboats capable of speeds approximating 110 miles per hour. The two went out on Lake Tarpon, where there is no speed limit, to drive *1087 their boats. While traveling side-by-side at approximately 80-85 miles per hour, something happened to cause the two boats to collide. Ted died as a result of the collision and Robert was seriously injured. Five eyewitnesses reported that they thought the boats were racing at the time, and the Boating Accident Investigation Report concluded that Ted and Robert were “racing (unsanctioned) south on Lake Tarpon” at the time of the accident. Robert denied that they were racing and testified in an affidavit that he and Ted were “simply enjoying driving fast across the water as our boats were designed to do, and as we frequently did on Lake Tarpon.”
Dorothy, as personal representative of Ted’s estate, filed a wrongful death action against the Crockfords that was subsequently settled by the Crockfords’ liability insurance carrier. We are not concerned with the result of that action. The Crock-fords filed suit against Ted’s estate, which turned to Continental to provide a defense and coverage under the marine insurance policy previously mentioned. Relying on the racing exclusion quoted earlier, Continental instituted a declaratory judgment action seeking a determination that the accident came within the racing exclusion, thereby relieving it of liability for the defense of the action and any resulting award of damages. The trial court held that the exclusion was ambiguous and “capable of being fairly and reasonably read both for and against coverage” and construed it in favor of coverage. Believing this decision to be erroneous, Continental appeals. Continental asserts that the exclusion applies to any racing event, sanctioned or unsanctioned, official or unofficial, and that it, therefore, acts to exclude coverage for what it contends to have been a race between Ted and Robert.
It is to the provisions of the exclusion clause that we must look to resolve the issue before us, and the textual point marked for emphasis by the parties upon which we now intently gaze is “any speed race.” Dorothy argues that this provision, undefined in the policy, is ambiguous and thus subject to interpretation. Relying upon the general rule that requires an ambiguous exclusion to be interpreted in favor of coverage, she contends that “any speed race” should refer only to officially-sanctioned speed races. She draws support for this argument from the provisions of the second sentence of the clause, which excepts from the exclusion “predicted log cruises or similar competitions and sailboat racing.” Because of these exceptions, she argues, the exclusion should be read to apply only to officially-sanctioned speed races. We agree with the underlying premise implicit in this argument that we should not consider the pertinent term in isolation from the other provisions of the exclusion clause and that we should try to harmonize all provisions when possible. See Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000). However, application of this general principle leads us to the opposite conclusion, which is that specifically stating what is excepted from the exclusion means, in this particular instance, that the exclusion is otherwise all-encompassing. Hence “any speed race” means any race regardless of whether it is officially sanctioned or impromptu. It is not for us to rewrite the exclusion and insert provisions advanced by Dorothy to make her argument plausible. See Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003); State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245 (Fla.1986).
The illogic of Dorothy’s argument becomes more readily apparent when other general rules of policy construction are applied here. Contrary to Dorothy’s assertions, we cannot say that the term *1088 “any speed race” is ambiguous simply because the policy does not define it. State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998) (“The lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts.”) (citing Container Corp. of Am. v. Maryland Cas. Co., 707 So.2d 733, 736 (Fla.1998); Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1139 (Fla.1998)). “[I]nsurance contracts must be construed in accordance with the plain language of the policy.” Swire, 845 So.2d at 165 (citing Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000); Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993)). It is when the policy provision is ambiguous and subject to differing interpretations that it should be construed strictly against the insurer in favor of coverage, and in instances when an exclusion clause is subject to interpretation, it should be construed even more strictly against the insurer than coverage provisions.. See Swire; Flores v. Allstate Ins. Co., 819 So.2d 740 (Fla.2002); Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732 (Fla.2002); CTC Dev.; Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla.1997); Hrynkiw v. Allstate Floridian Ins. Co., 844 So.2d 739 (Fla. 5th DCA 2003); State Comprehensive Health Ass’n v. Carmichael, 706 So.2d 319, 320 (Fla. 4th DCA 1997) (“In addition, exclusionary clauses are to be construed even more strictly than coverage clauses.”) (citations omitted). The rationale for this general principle is that insurance policies are prepared by experts at the behest of the insurance companies, and the various provisions and the relationship of each to the others is often difficult for laymen to understand or fully appreciate. Miller Elec. Co. of Fla. v. Employers’ Liab. Assur. Corp., 171 So.2d 40 (Fla. 1st DCA 1965); New Amsterdam Cas. Co. v. Addison, 169 So.2d 877 (Fla. 2d DCA 1964).
Our first task, therefore, is to determine whether the provision “any speed race” is ambiguous. The plain meaning of the provision “any speed race” derives from the common everyday understanding of the term which is “a contest of speed.” Merriam Webster’s Collegiate Dictionary 961 (10th ed.1997); see Hrynkiw, 844 So.2d at 741 (interpreting policy language according to its “everyday meaning” and as it is “understandable to a layperson”) (footnote omitted). While we have found no Florida case defining this specific term, courts in other jurisdictions have defined very similar terminology. For example, in State v. Dionne, 1 Conn.Cir.Ct. 395, 24 Conn.Supp. 59, 186 A.2d 561 (1962), the court explained:
As far as counsel and the court have been able to discover, the words ‘for any race’ have never been defined by the courts of Connecticut. The Century Dictionary and Cyclopedia defines the word ‘race’ as ‘a contest of speed; a competitive trial of speed.’ It is ‘a competition of speed, in running, skating, riding etc.’ Webster, New World Dictionary. In construing a statute to prohibit gambling on races, the Supreme Court of Tennessee stated: ‘The term [‘race’] was used by the framer of the statute to accomplish a practical purpose and in a popular and well-defined sense; that is, in a sense which involves the idea of competitive locomotion. In other words, it here embraces every contest or trial of progression, including speed and endurance, one or both * * *.’ State v. Hayes, 116 Tenn. 40, 44, 93 S.W. 98, 99. Thus a trial of speed is necessary to constitute a race.
Id. at 564 (citations omitted).
We believe that in order to have a speed race it is not necessary that it be officially *1089 sanctioned or even prearranged. See Dionne, 186 A.2d at 564 (“It is not necessary that there be some prior agreement or understanding or some prearrangement before there can be a race; there can be a race by total strangers on the spur of the moment”) (citing Reader v. Ottis, 147 Minn. 335, 180 N.W. 117 (1920); Oppenheimer v. Linkous’ Adm’x, 159 Va. 250, 165 S.E. 385 (1932)). The decision in Oppenheimer colorfully illustrates this point. There, two automobiles met on a road headed into a certain town. One automobile, a Pierce Arrow, was driven by a fellow named Smoot and the other, a new Cadillac, was driven by a chauffeur named Workmond, by whom sat the owner. As they approached town, the car driven by Workmond was in the lead, traveling at a speed of approximately thirty-five miles per hour. Smoot honked to signal Work-mond to move out of his way. Rather than yield to Smoot, Workmond pulled to the right and increased his speed. Smoot pulled to the left, presumably to pass, and the two drivers found themselves traveling side-by-side on the roadway. A race suddenly and unexpectedly ensued whereby, at a very high rate of speed, each sought to gain the advantage over the other in entering the town. A collision resulted in which a bystander was killed. In the ensuing wrongful death action, the owners of both vehicles were found jointly liable. Affirming that decision, the court observed, “[S]o this chauffeur, when sig-nalled, should have yielded the road to the following car, but as a man of mettle it ill became him to be passed by a mere Pierce Arrow and a 1926 model at that. He turned on more gas and went hurtling down the road and into town at a speed increased and reckless.... That these two ears were racing is too plain for argument.” Oppenheimer, 165 S.E. at 386.
We conclude that the term “any speed race” is clear, unambiguous, and means any contest of speed regardless of whether it is sanctioned, unsanctioned, official or unofficial. Accordingly, any further resort to the rules of construction we have previously discussed is not necessary. Summary judgment was improperly entered by the trial court and it must be reversed. Our inquiry is concluded, but our decision does not bring closure to this case. As in Oppenheimer, the trier of fact must decide whether Ted and Robert were racing at the time of the fatal accident.
REVERSED and REMANDED FOR FURTHER PROCEEDINGS.
PETERSON and THOMPSON, JJ., concur.