844 So.2d 739 (2003)
Jeffrey HRYNKIW, Appellant,
v.
ALLSTATE FLORIDIAN INSURANCE COMPANY, Appellee.
No. 5D02-1942.
District Court of Appeal of Florida, Fifth District.
May 9, 2003.
*740 Karla T. Torpy of Graham, Moletteire & Torpy, P.A., Melbourne, for Appellant.
Jessica M. Farrelly and David B. Shelton of Rumberger, Kirk & Caldwell, Orlando, for Appellee.
SAWAYA, J.
Jeffrey Hrynkiw appeals the final judgment rendered in the declaratory judgment action filed by Allstate Floridian Insurance Company to resolve a coverage dispute concerning a homeowners insurance policy Allstate issued to Robert and Mary Jane Thompson. Pursuant to Allstate's motion for judgment on the pleadings, *741 the trial court entered the judgment under review finding that Allstate has no duty to defend or indemnify the Thompsons or their minor son, Lon, in the underlying personal injury suit brought against them by Hrynkiw. We affirm.
We will discuss, in the following order, the factual allegations and procedural background, the pertinent clauses in the policy and our legal analysis.

Factual Allegations And Procedural Background
A motion for judgment on the pleadings must be decided only on the pleadings without the aid of outside matters. See Cartan Tours, Inc. v. ESA Servs., Inc., 833 So.2d 873, 875 (Fla. 4th DCA 2003) (citation omitted). Accordingly, the allegations in the pleadings filed in the personal injury action by Hrynkiw against the Thompsons formed the nucleus of the trial court's decision to declare that no coverage exists under the insurance policy issued to the Thompsons. What follows is a compendium of those allegations and an explanation of the procedural background of the instant case.
Hrynkiw alleges in his complaint that Lon willfully and intentionally committed a battery on Hrynkiw when he obtained possession of a pistol belonging to his parents, Robert and Mary Jane Thompson, pointed the pistol at Hrynkiw's head and fired at close range. The bullet pierced Hrynkiw's skull near the bridge of his nose and exited behind his right ear. The complaint further alleges that Lon "intended to cause harmful or offensive contact ... in that he fired the pistol at the victim's head and knew that such an act was substantially certain to result in harm or death."
In separate counts of the complaint, Hrynkiw also alleges that he is entitled to recover from Robert and Mary Jane Thompson based on their negligence in failing to safely store the pistol in their home and in failing to exercise parental control over Lon. It was generally alleged that Robert and Mary Jane knew that Lon was on probation with the State of Florida for violent behavior committed against another victim, that Lon had dangerous propensities and that Lon was unfit to use a firearm.
When the Thompsons looked to Allstate to provide them with coverage under their policy and a defense to the suit Hrynkiw filed against them, Allstate reserved its right to deny coverage, provided a defense pursuant to that reservation of rights and filed the instant declaratory judgment action naming the Thompsons and Hrynkiw as defendants.[1] The Thompsons did not answer the suit. Allstate moved for judgment on the pleadings, and the trial court granted Allstate's motion finding that, as a matter of law, coverage was excluded for the injuries suffered by Hrynkiw based on two clauses contained within the policy: the intentional or criminal act exclusion clause and the joint obligations clause.

The Clauses
Exclusion clauses, like the intentional or criminal act exclusion clause contained in the policy issued to the Thompsons, are generally considered contrary to the fundamental protective purposes of insurance. Thus, the courts give a strict interpretation to exclusion clauses, as opposed to the liberal interpretation accorded coverage provisions.[2] When determining *742 the meaning and scope of an exclusion clause or other provisions of an insurance policy, legal niceties, technical terms, and phraseology extracted from the vernacular of the insurance industry should never transcend the common understanding of the ordinary person. Therefore, the proper inquiry is not whether a legal scholar can, with learned deliberation, comprehend the meaning of an insurance policy provision, but instead, whether it is understandable to a layperson.[3] Hence, we will apply everyday meaning to the language of the instant policy and not strain for a contrary interpretation.[4] With these principles in mind, we turn to the provisions of the clauses at issue in the instant case.
The pertinent part of the intentional or criminal act exclusion clause in the Thompsons' policy provides that it does "not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person."[5] The everyday meaning of this clause is that the policy does not insure against damages that an insured intentionally inflicts or that are reasonably expected to result from an insured's intentional or criminal acts. The willingness of the courts to uphold intentional or criminal act exclusion clauses is premised on the jurisprudential maxim that no person should be allowed to profit from his or her own wrong. Lawyers and laymen alike generally understand that the public policy against insuring for losses resulting from intentional or criminal acts is usually justified by the assumption that such acts would be encouraged, or at least not dissuaded, if insurance were available to shift the financial burden of the loss from the wrongdoer to the insurer. The intentional or criminal act exclusion in the Thompsons' policy is sustainable without further comment.
The joint obligations clause of the Thompsons' policy provides in pertinent part:
The terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person.
The policy defines "insured person" as "you and, if a resident of your household: a) any relative; and b) any dependent person in your care." The policy further defines "you" and "your" as "the person named on the Policy Declarations as the insured and that person's resident spouse."
This clause "forges the various parties insured by a policy into a joint and inseparable legal entity" so that "when the conduct of one insured defeats liability protection for a given loss, the policy deprives all other insureds of liability protection *743 for that loss, even if the loss was also proximately caused by one of those parties." Allstate Ins. Co. v. Raynor, 143 Wash.2d 469, 21 P.3d 707, 713 (2001) (citation omitted). We believe that the joint obligations clause is unambiguous and understandable to the ordinary person. Thus, the clause is enforceable.
We proceed next to determine whether coverage is excluded for the alleged negligent acts of the parents based on the intentional or criminal act exclusion clause and the joint obligations clause. Parenthetically, we note that Hrynkiw concedes that the intentional or criminal act exclusion clause does exempt coverage for the count alleging a cause of action based on Lon's act of shooting him.

Legal Analysis
Allstate contends that coverage is exempted for the negligent acts of Lon's parents because the intentional or criminal act exclusion clause and the provisions of the joint obligations clause impose joint liability on the parents for the intentional or criminal acts of Lon. Because the Florida courts have not had occasion to consider the appropriate application of the joint obligations clause to the intentional or criminal act exclusion clause, we will begin with an analysis of decisions from other jurisdictions that have considered and applied them.
Although labeling a joint obligations clause identical to the clause at issue in the instant case as "more than a little mysterious," the court in Allstate Insurance Co. v. Steele, 74 F.3d 878 (8th Cir.1996), observed that such clauses have nevertheless been consistently construed to mean that an insured's intentional act bars a claim against another insured for negligent supervision. Id. at 881 (citing Allstate Ins. Co. v. Pond Bar, 1995 WL 568399 (D.Minn. May 19, 1995); Castro v. Allstate Ins. Co., 855 F.Supp. 1152 (S.D.Cal.1994); Allstate Ins. Co. v. McCranie, 716 F.Supp. 1440 (S.D.Fla.1989), aff'd, 904 F.2d 713 (11th Cir.1990); Allstate Ins. Co. v. Lobracco, 1992 WL 356270 (Ohio Ct.App. Nov. 24, 1992)); see J.C. v. N.B., 335 N.J.Super. 503, 762 A.2d 1062 (App.Div. 2000); Raynor. The rationale of these decisions is that the underlying cause of both the intentional and negligent claims is the intentional act of the wrongdoer. In essence, regardless whether the immediate intentional act inflicts the injury or the antecedent negligence sets in motion the events that lead to that injury, it is the underlying cause of the injurythe intentional act for which all of the insureds are equally responsiblethat determines coverage. Hence, the injured person should not be allowed to circumvent the intentional act exclusion clause by filing a claim for negligence based on the same underlying intentional act that actually caused the injury. This is especially true when the policy contains a joint obligations clause that makes all of the insureds responsible for the acts of another.
We agree with this rationale because it is logical, reasonable and comports with Florida law. In Landis v. Allstate Ins. Co., 546 So.2d 1051 (Fla.1989), the insureds committed acts of sexual abuse against children placed in their daycare center and were convicted of criminal charges stemming from that wrongful conduct. The parents brought suit against the insureds for gross negligence in the insured's care and supervision of the children and for intentional harm. Allstate, which had issued a homeowners insurance policy to the insureds, brought a declaratory judgment action claiming that there was no coverage based on the intentional act exclusion clause contained in the policy. The court affirmed the trial court's ruling that coverage was excluded for injuries suffered by the children by the intentional *744 acts of the insureds even though the gist of the action filed against them was negligence.
We find Landis analogous to the instant case because, based on the joint obligations clause, we must treat the Thompsons and Lon as "a joint and inseparable legal entity" so that the act of Lon, in essence, becomes the act of the Thompsons for purposes of coverage under the policy. Therefore, under Landis, Hrynkiw should not be allowed to bypass the intentional or criminal act exclusion clause by suing the Thompsons for their negligent supervision or negligent failure to safely store the firearm.[6] Based on the clear and unambiguous language of the joint obligations clause contained in the Thompsons' policy, we conclude that coverage was excluded for the alleged negligent acts of Lon's parents.[7]
Hrynkiw brings to our attention the decision by the Alaska Supreme Court in C.P. v. Allstate Insurance Co., 996 P.2d 1216 (Alaska 2000), which supports his argument that coverage is not excluded for the alleged negligence of the Thompsons. In C.P., the court held that coverage was not excluded by application of an intentional or criminal act exclusion clause and a joint obligations clause, both of which are very similar to the clauses in the instant case, when the insureds were sued for their negligent supervision of another insured who committed acts of sexual abuse against the victim. We find C.P. distinguishable based on various provisions of Alaska law that are not in accord with Florida law. For example, the court in C.P. held that, based on the doctrine of reasonable expectations, the exclusion clauses should be narrowly construed to be more consistent with the reasonable expectations of the insureds that they would be covered against the claims that they negligently caused the injury. However, the doctrine of reasonable expectations has not been looked upon with favor by the Florida courts and its rejection as a viable legal principle in cases involving insurance policy interpretation is premised on the view that its application may implicate rewriting insurance policies. Deni Assocs.; Castillo.
*745 The court in C.P. also held that the joint obligations clause did not effectively deal with multiple causes of the injury. Under Florida law, the issue of multiple causes in cases involving coverage disputes is usually decided by application of the concurrent cause doctrine. This doctrine, which permits coverage when the injury is caused by multiple causes and one of the causes is an insured risk, only applies when the causes are not related and dependent, but rather involve separate and distinct risks. American Sur. & Cas. Co. v. Lake Jackson Pizza, Inc., 788 So.2d 1096 (Fla. 1st DCA 2001), review denied, 814 So.2d 439 (Fla. 2002); Transamerica Ins. Co. v. Snell, 627 So.2d 1275 (Fla. 1st DCA 1993), review denied, 639 So.2d 981 (Fla.1994). Based on the record in the instant case, we are unable to say that the alleged acts of negligent supervision and failure to properly secure the firearm are sufficiently separate and distinct from Lon's act of shooting the victim with the firearm. Thus, the concurrent cause doctrine as applied by the Florida courts would not support the conclusion reached by the court in C.P.

Conclusion
We conclude, based on the allegations contained in the pleadings and the provisions of the two clauses we have analyzed, that coverage was excluded for the claims presented by Hrynkiw based on the intentional acts of Lon and the alleged negligent acts of the Thompsons. Hence, Allstate was clearly entitled to a judgment as a matter of law, and the trial court correctly granted Allstate's motion for judgment on the pleadings.
AFFIRMED.
MONACO, J. and LAMBERT, B., Associate Judge, concur.
NOTES
[1] Declaratory judgment actions are typically filed to resolve coverage disputes. See, e.g., Landis v. Allstate Ins. Co., 546 So.2d 1051 (Fla.1989); American Reliance Ins. Co. v. Perez, 712 So.2d 1211 (Fla. 3d DCA 1998).
[2] See Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135 (Fla. 1998); Union Am. Ins. Co. v. Maynard, 752 So.2d 1266 (Fla. 4th DCA 2000); Premier Ins. Co. v. Adams, 632 So.2d 1054, 1055 (Fla. 5th DCA 1994).
[3] See State Farm Fire & Cas. Co. v. Castillo, 829 So.2d 242 (Fla. 3d DCA 2002); Maynard; Thomas v. Prudential Prop. & Cas., 673 So.2d 141 (Fla. 5th DCA 1996); Lindheimer v. St. Paul Fire & Marine Ins. Co., 643 So.2d 636 (Fla. 3d DCA 1994), review denied, 651 So.2d 1194 (Fla. 1995); see also Prudential Property & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 471 (Fla.1993) (quoting Gulf Life Ins. Co. v. Nash, 97 So.2d 4, 9-10 (Fla. 1957)).
[4] Thomas, 673 So.2d at 142-43.
[5] The inclusion of the foreseeability provision in this exclusion clause differentiates this clause significantly from the typical intentional act exclusion clause that has been the subject of so much litigation in the past. See, e.g., Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467 (Fla. 1993).
[6] It is application of the joint obligations clause that differentiates the instant case from other cases where the insureds are sued for negligent supervision and there is no basis for concluding that the insureds were involved in or personally responsible for the actual acts of sexual abuse committed against the victims. See, e.g., Sunshine Birds & Supplies, Inc. v. United States Fid. & Guar. Co., 696 So.2d 907 (Fla. 3d DCA 1997) (holding that Landis was inapplicable because the insureds were not involved in, or directly responsible for, the sexual abuse of the victims and the sole basis for their alleged liability was their negligent supervision of the actual abuser).
[7] Allstate also contends that with or without a joint obligations clause, where the policy excludes coverage for bodily injury intended or expected by "an" or "any" insured, courts in other jurisdictions deny coverage for both the intentional act and for the negligent supervision claim. See American Family Mut. Ins. Co. v. Mission Med. Group, Chtd., 72 F.3d 645 (8th Cir.1995); Allstate Ins. Co. v. Gilbert, 852 F.2d 449 (9th Cir.1988); Western Mut. Ins. Co. v. Yamamoto, 29 Cal.App.4th 1474, 35 Cal.Rptr.2d 698 (1994); Fire Ins. Exch. v. Altieri, 235 Cal.App.3d 1352, 1 Cal.Rptr.2d 360 (1991); Hewitt v. Allstate Ins. Co., 726 So.2d 1120 (La.Ct.App. 1999); Noftz v. Ernsberger, 125 Ohio App.3d 376, 708 N.E.2d 760 (1998); Allstate Ins. Co. v. Jordan, 16 S.W.3d 777 (Tenn.Ct.App.1999). These courts reason that the inclusion of these terms imposes joint liability on all insureds for the intentional acts of another insured, much like a joint obligations clause. Allstate urges this court to adopt the reasoning of these courts because the intentional or criminal act exclusion clause in the policy issued to the Thompsons contains similar terminology. We decline to decide this specific issue because of our conclusion that the provisions of the joint obligations clause imposes joint obligations on the Thompsons for the intentional or criminal acts of Lon.