**Myra WILSON, for the ESTATE OF Adriane WILSON, Plaintiff,**

v.

**GENERAL TAVERN CORPORATION, d/b/a Big City Tavern, a Florida corporation, and Cecelia A. Jackson, an individual Defendants.**

**Cecelia A. Jackson, an individual, Third–Party Plaintiff,**

v.

**Interstate Fire and Casualty Company, Third–Party Defendant.**

**No. 05–81128CIV.**

United States District Court, S.D. Florida.

Dec. 29, 2006.

Sina Bahadoran, Andrew E. Grigsby, Hinshaw & Culbertson LLP, Miami, FL, for Interstate.

Steven B. Phillips and Douglas L. Phipps, Littky Smith & Phipps, Lake Worth, FL, for Jackson.

### ORDER GRANTING INTERSTATE'S MOTION FOR SUMMARY JUDGMENT AND DENYING WILSON'S MOTION FOR SUMMARY JUDGMENT

RYSKAMP, District Judge.

THIS CAUSE comes before the Court pursuant to Third–Party Defendant Interstate Fire & Casualty Company's ("Interstate") Motion for Summary Judgment, filed June 14, 2006 **[DE 18]**. Plaintiff Myra Wilson ("Wilson") responded and filed her own Motion for Summary Judgment on July 20, 2006 **[DE 25]**. Interstate responded to Wilson's Motion for Summary Judgment on July 31, 2006 **[DE 27]**. Wilson replied on August 10, 2006 **[DE 28]**.[1] The court heard oral argument on

---

1. When Wilson failed to respond to Interstate's Motion for Summary Judgment within 10 days, Interstate filed a reply on July 18, 2006 [DE 24], essentially notifying the Court that Wilson had failed to respond. Also on July 18, 2006 [DE 22], the Court issued Wil-

these motions on September 22, 2006. These motions are ripe for adjudication.

## I. *BACKGROUND*

The of facts of this case are tragic. Minutes after midnight on June 15, 2000, Cecelia A. Jackson ("Jackson"), a cook for General Tavern Corporation ("General Tavern"), doing business as The Big City Tavern in West Palm Beach, Florida, finished her shift and began to drive home in her own car while legally intoxicated. Adriane Jerome Wilson ("Decedent"), age 24, was standing in a telephone booth at or near the intersection of 8th St. and North Tamarind Ave. Jackson struck and killed Decedent. Wilson, Decedent's mother, filed suit against Jackson and General Tavern, alleging as follows:

4) On or about June 15, 2000, ADRIANE JEROME WILSON, age 24, deceased, was lawfully in a public place, to wit: a telephone booth at or near the intersection of the 8th St. and N. Tamarind Ave, City of West Palm Beach, Palm Beach County, when he was struck and killed by the Defendant CECILIA A. JACKSON.

5) The Defendant, CECILIA A. JACKSON, was intoxicated and/or her mental and/or physical capacity was impaired, which caused her to lose control of her motor vehicle, jump a curb, cross over a pedestrian sidewalk striking the phone booth occupied by the deceased, ADRIANE JEROME WILSON.

\*  \*  \*  \*  \*  \*

11) Jackson negligently became intoxicated when she knew or should have known that she would be driving home in her motor vehicle.

son an order to show cause why she had not responded to the summary judgment motion. Wilson responded to the order to show cause

12) As a direct and proximate result of the negligent consumption of alcohol by JACKSON, JACKSON struck and killed ADRIANE JEROME WILSON with her motor vehicle after leaving the premises of GENERAL TAVERN. . . .

(Doc. 1; Ex. C). Interstate issued a Commercial Business Policy, No. CBP3002147 ("policy"), to General Tavern, incepting on December 15, 1999 and terminating on December 15, 2000. (Doc. 17; Ex. A). Interstate entered into a confidential settlement agreement with Wilson as to her claim against General Tavern.

Wilson's claim against Jackson forms the basis of this action. In pertinent part, the policy provides as follows:

**HIRED AUTO AND NON–OWNED AUTO LIABILITY**

**HIRED AUTO LIABILITY**

The insurance provided under COVERAGE A (Section 1) applies to "bodily injury" or "property damage" arising out of the maintenance or use of eight "hired auto" by you or your employees in the course of your business.

\*  \*  \*  \*  \*  \*

2. WHO IS AN INSURED (Section II) is replaced by the following:

Each of the following is an insured under this insurance to the extent set forth below:

a. You;

b. Any other person using any "hired auto" with your permission.

c. With respect to a "non-owned auto", any partner or executive officer of yours, but only while such "non-owned who auto" is being used in your business;

on July 27, 2006 [DE 26], explaining that her failure to respond within 10 days was due to an administrative error.

d. Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under a, b, or c above.

None of the following is an insured:

a. Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;

b. Any partner or executive officer with respect to any "auto" owned by such partner or officer or a member of his or her household;

c. Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

d. The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or employee of any such owner or lessee;

e. Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**NON–OWNED AUTO LIABILITY**

The insurance provided under **COVERAGE A** (Section 1) applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

The following additional definitions apply:

\*   \*   \*   \*   \*   \*

"Hired auto" means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease, hire, or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.

"Non-owned auto" means any "auto" you do not own, lease, hire or borrow which are used in connection with your business. However, if you are a partnership a "non-owned auto" does not include any auto owned by any partner.

(Doc. 1; Ex. B). At the time of the accident, Jackson had finished her shift at General Tavern and was driving home. (Jackson Deposition, throughout). At the time of the accident, Jackson was employed by General Tavern as a cook. During her entire period of employment at General Tavern she was employed as a cook. Jackson was neither a partner nor an executive officer of General Tavern. (Jackson Deposition, 8). Jackson was driving her own automobile at the time of the accident. (May 3, 2006 Florida Department of Highway Safety Motor Vehicle Inquiry for 1999 Mazda, VINJM1NA3516L0107001; June 15, 2000 Florida Traffic Crash Report No. 5849427).

Jackson entered into a consent judgment with Decedent's estate for $1.85 million. Interstate was never notified of Jackson's intent to enter into a consent judgment. (Price Decl.). In fact, at no time while the underlying action was pending did Jackson tender same to Interstate for defense or indemnity. Jackson now seeks to enforce that judgment against Interstate, claiming she is covered under the policy. Interstate and Wilson have filed cross-motions for summary judgment on the issue of whether Jackson is covered under the policy.

## II. *LEGAL STANDARD*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof. *Id.* at 322–23, 106 S.Ct. 2548. The moving party need not supply "affidavits or other similar materials negating the opponent's claim." *Id.* at 323, 106 S.Ct. 2548.

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). Although the nonmoving party need not present evidence that would be admissible at trial, it may not rest on his pleadings. *Id.* "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548; *see also Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1281–82 (11th Cir.1999).

## III. DISCUSSION

■ "Under Florida law, an insurance policy should be construed in its entirety and given the construction which reflects the intent of the parties." *Gulf Tampa Drydock v. Great Atlantic Ins. Co.,* 757 F.2d 1172, 1174 (11th Cir.1985) (citing *Landress Auto Wrecking Co. v. United States Fidelity & Guaranty Co.,* 696 F.2d 1290, 1291 (11th Cir.1983) (applying Florida law)). *See also Hrynkiw v. Allstate Floridian Ins. Co.,* 844 So.2d 739, 742 (Fla. 5th DCA 2003) (policy language is to be interpreted according to its "everyday meaning" as it is "understandable to a layperson.").

■ Florida applies a bright-line test that the duty to defend is determined strictly by the allegations in the complaint. *See Higgins v. State Farm Fire & Casualty Co.,* 894 So.2d 5, 9–10 (Fla.2004). An insurer must defend only when the initial pleadings bring the case within coverage. *See Pioneer Nat'l Title Insurance Co. v. Fourth Commerce Props. Corp.,* 487 So.2d 1051, 1054 (Fla.1986). There is no obligation to defend when the pleadings show the applicability of a policy exclusion. *See Acceptance Insurance Co. v. Bates, Dunning & Associates Inc.,* 858 So.2d 1068, 1069 (Fla. 3d DCA 2003). If there is no duty to defend, there is no duty to indemnify. *See Fun Spree Vacations, Inc. v. Orion Insurance Co.,* 659 So.2d 419, 422 (Fla. 3d DCA 1995).

The policy contains a "Hired Auto and Non–Owned Auto Liability" endorsement that provides auto liability coverage in two discrete and limited circumstances. Under the first part, the endorsement provides "hired auto" coverage. "Hired auto" is a defined term meaning "any 'auto' you lease, hire, or borrow." The policy defines "you" as General Tavern. Consequently, "hired auto" means an auto that General

Tavern leases, hires, or borrows. Here, there is no question that General Tavern did not hire the auto Jackson was driving. To the contrary, the Motor Vehicle Inquiry from the Florida Department of Highway Safety confirms that Jackson owned the 1990 Mazda she was driving at the time of the accident.[2] Applying the plain language of the policy, there is no hired auto coverage for Jackson because she owned the car involved in the accident.

█ The endorsement also provides for "non-owned auto" liability coverage. As noted, Jackson owned auto she was driving. Nevertheless, for Jackson, as opposed to General Tavern, to qualify as an insured, she must qualify under the "who is an insured" section. That section limits insured status to "with respect to 'a non-owned auto', any partner or executive officer of [General Tavern], but only while such non-owned auto is being used in [General Tavern's] business." Here, the evidence demonstrates that Jackson was a cook, not a partner or an executive officer. Furthermore, Jackson is expressly excluded from qualifying as an insured, as the endorsement specifically provides that "none of the following is insured... the owner of a non-owned auto'."

Putting aside these provisions, for Jackson's auto to qualify as a "non-owned auto," Jackson must show that it was "used in connection with [General Tavern's] business." Under Florida law, and is proven by the evidence in this case, Jackson had finished her shift at General Tavern and was driving home at the time of the accident. Florida follows the so-called "going and coming" rule, which provides essentially that "injury sustained by an employee when in route to or from his regular place of business are noncompensable, as they are not considered to have

arisen out of or in the course of employment." *Susan Loverings Figure Salon v. McRorie,* 498 So.2d 1033, 1034 (Fla. 1st DCA 1986). *El Viejo Arco Iris, Inc., v. Luaces,* 395 So.2d 225 (Fla. 1st DCA 1981) applies the going and coming rule to an employee involved in the accident while driving home. A plumber's assistant's employer asked him to pick up some supplies for use on the job site the next day. *Id.* at 255. After picking up the supplies, the assistant resumed his trip home and was involved in an accident. *Id.* On appeal, the court ruled that he was not in the course and scope of his employment, but simply driving home, reasoning:

> had the claimant's accident occurred prior to picking up the plumbing supplies, then the claimant would have still been within the course of his employment and under the special errand exception to the going and coming rule. However, since the claimant had completed the burden of performing the employer's instructions by picking up a plumbing supplies, he was outside his employment at the time of the accident. Consequently, under the going and coming rule, claimant is not entitled to compensation since his accident occurred while en route home from work.

*Id.* at 226. The same rule applies in insurance coverage cases for employees seeking coverage under the employer's policies. In *Nova Cas. Co. v. Anderson,* 2005 WL 3336496 (M.D.Fla.2005), the court relied on principles supporting the going and coming rule in finding no coverage for an employee involved in a car accident on his way home. There, an individual named Mercer was employed by an individual named Anderson in the aluminum siding business. *Id.* at *1. One afternoon, after

---

**2.** Public records are presumed to be admissible at trial and on summary judgment under the public records exception to the hearsay rule in Fed.R.Evid. 803(8).

the two had completed their shift, Anderson stopped at a convenience store and bought beer for them with Mercer's money. *Id.* at \*2. Mercer was a minor. *Id.* at \*1. Later that evening, Anderson purchased more alcohol. *Id.* at \*2. After he left Anderson's house, Mercer drove his own vehicle and rear-ended another car, killing the driver. *Id.* Anderson's insurance carrier instituted a declaratory action for a determination of no coverage as to Anderson or Mercer. The court determined that Anderson's allegedly wrongful conduct, that is, providing a minor with alcohol, was not related to the conduct of his aluminum siding business, and he thus failed to satisfy the definition of an insured under the policy. *Id.* at \*3. Though he could be held liable for the claimant's death, the court recognized that "[c]overage is provided from the language of the policy... and not premised on the wrongdoing of a named insured." *Id.* at \*5. As to Mercer, the court ruled that his alcohol consumption in and the collision on his way home was not what Anderson employed him to do, that the accident "did not occur within the time and space limits" of his employment, and that Mercer was not required as a part of his employment to drink or socialize with Anderson after work ended. *Id.* The court accordingly ruled that the insurer had no duty to defend or indemnify Mercer. Here, it is undisputed that Jackson had finished her shift and was driving home when the accident occurred. Jackson herself admitted in her deposition that she had clocked out at the time of the accident and that she was not serving any purpose for her employer at the time of the accident. (Jackson Deposition, 63–65.) Equally, her car was not being used in the course of or in connection with General Tavern's business as is required for coverage under the hired and non-owned auto liability endorsement.

Interstate is therefore entitled to summary judgment.

█ Wilson argues no facts to the contrary. Rather, invoking a tortured interpretation of the duty to defend test, she attempt to argue that "these matters are not relevant and further should not be considered by the Court because the Fourth Amended Complaint is silent on these matters and Interstate refers to matters outside the allegations contained within the complaint in support of their motion." (Mot. at paragraph 21). Wilson chiefly refers to the fact that the operative complaint in the underlying action does not allege that Jackson was outside the scope of her duties at the time of the accident. The Court has reviewed both the record and the operative complaint in the underlying action and concludes that the operative complaint omitted that crucial, undisputed fact in a patent attempt to "plead into coverage." A liability insurer only has the duty to defend the insured when the initial pleadings fairly bring the case within the scope of coverage. *See State Farm Fire & Casualty Co. v. Tippett,* 864 So.2d 31, 35 (Fla. 4th DCA 2003) (citing *Pioneer,* 487 So.2d at 1054). As the *Tippett* decision noted:

> [i]f the pleadings show the applicability of a policy exclusion, the insurer has no duty to defend. Thus, working alone in a pleading does not create a duty to defend *regardless of its artfulness.* The allegations within the complaint must state a cause of action that seeks recovery for the type of damages covered by the insurance policy in question. The right to an early resolution of a coverage issue should turn on the merits ... on whether a policy exclusion applies and *not on creative pleading.*

864 So.2d at 35–36 (internal citations omitted) (emphasis added). Otherwise stated, "the insurer is not obligated to provide a

defense for a stranger merely because the plaintiff alleges that the defendant is an insured or alleges facts which, if true, would make the defendant and insured. The mere allegations of the plaintiff's petition may not create an obligation on the part of the insurer to defend were no such obligation previously existed." *Nateman v. Hartford Cas. Insurance Co.*, 544 So.2d 1026, 1027 (Fla. 3d DCA, 1989) (quotation omitted), *review denied* 553 So.2d 1166 (Fla.1989).

Interstate also requests summary judgment on the grounds that Jackson never tendered the underlying lawsuit to Interstate. Wilson maintains that Jackson need not have provided Interstate with actual notice of the action against Jackson. Assuming without deciding that constructive notice was sufficient to trigger an obligation on the part of Interstate to defend and indemnify, such is irrelevant, as Jackson is not an insured under the policy.

## IV. CONCLUSION

THE COURT, having considered the parties written submissions and oral arguments, hereby.

ORDERS AND ADJUDGES that Interstate's Motion for Summary Judgment, filed June 14, 2006 [DE 18], is GRANTED. It is further.

ORDERED AND ADJUDGED that Wilson's Motion for Summary Judgment, filed July 20, 2006 [DE 25], is DENIED. Final judgment shall be entered by separate order.