[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13705
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 20, 2010
JOHN LEY
CLERK

D. C. Docket No. 06-60309-CV-STB

NEW HAMPSHIRE INSURANCE COMPANY,

Plaintiff-
Counter-Defendant-
Appellee,

versus

ROBERT KRILICH,
RAINBOW AIR CORP.,

Defendants-
Counter-Claimants-
Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 20, 2010)

Before EDMONDSON, BIRCH and CARNES, Circuit Judges.

PER CURIAM:

New Hampshire Insurance Company issued a marine insurance policy on a 110-foot yacht that belonged to Rainbow Air Corporation. Rainbow Air's sole shareholder, Robert Krilich, was named as an additional insured on the policy. New Hampshire sought a declaratory judgment on whether it was liable to Rainbow Air and Krilich (collectively, Krilich) for the loss of the vessel, which partially sank at her berth in clear weather and calm seas. After a five-day bench trial, the district court issued a declaratory judgment in favor of New Hampshire and dismissed with prejudice Krilich's breach of contract counterclaim, which had alleged that the vessel was well-maintained and that a rupture in her keel had caused her to sink.[1] Krilich appeals.

The maritime insurance policy on the yacht excluded from coverage "any loss or damage arising out of . . . lack of reasonable care or due diligence . . . in the operation or maintenance" of the vessel. Doc. 158 at 8. The evidence at trial showed that the vessel had developed a fracture in its fiberglass keel, which allowed seawater to pass into the 700 gallon "black water" sewage holding tank. Id. at 3, 10. The cause of that fracture was undetermined. Id. at 10. The

---

[1]The parties consented to have a magistrate judge preside over all of the proceedings, including the trial.

watertight cover for the blackwater tank was unsecured, and water overflowed the tank and filled the bilges and the surrounding engine room space. Id. The vessel's static water line rose to the height of the sea chests, and their covers were not fastened securely, so water flooded the engine room. Id. at 11. The engine room bilge pumps were either turned off or inoperable, and the bilge alarms did not work. Id. at 12, 13.

After hearing testimony at trial, including that of experts for both sides, the district court found that the fracture in the keel did not cause the vessel to sink. Id. at 22. Instead, the court concluded that "the failure to properly maintain" the vessel "by securing the watertight tops on the sea chests and maintaining operational bilge pumps and alarms . . . was the proximate, efficient cause of the vessel's submersion." Id. at 23. The court observed that all of the experts agreed that the vessel "would not have sunk as quickly or in the manner that it did if the sea chests had been secured watertight." Id.

The court also found that the conditions that led to the vessel's submersion "were all detectable through the exercise of due diligence and the implementation of a regularly scheduled inspection and maintenance program." Id. at 27. The unsecured black water tank cover and sea chest covers presented an "open and obvious" condition "had anyone bothered to look." Id. The court held that Krilich

3

was responsible for the actions of his agent, who was in charge of the vessel's maintenance, and because the agent did not exercise due diligence in the maintenance of the vessel, it sank. See id. at 24, 28–29. Thus, the court concluded that New Hampshire's policy provided no coverage for the resulting damage. Id. at 34.

After trial both sides filed proposed findings and conclusions of law, and Krilich argued that Florida's concurrent cause doctrine should apply to determine whether the New Hampshire policy covered the loss. The district court found that Krilich's argument was beyond the scope of the parties' pre-trial stipulation. That stipulation stated that the insurance contract was governed by federal maritime law and/or Florida law, and it did not identify the applicable proximate cause standard. Krilich contends that the district court abused its discretion when it did not consider whether the Florida concurrent cause doctrine instead of the federal maritime proximate cause doctrine could apply to determine causation under the maritime insurance contract. See Hunt v. Marchetti, 824 F.2d 916, 918 (11th Cir. 1987) ("[A] district court has 'wide latitude' in determining whether a party is bound by a [Fed.] Rule [Civ. P.] 16 pre-trial order, and decisions regarding the effect of pre-trial stipulations will not be disturbed on appeal unless the court "has clearly abused the broad discretion vested in it by Rule 16." (brackets and

4

quotation marks omitted)).

Under federal maritime law "the proximate cause is the efficient cause and not a merely incidental cause which may be nearer in time to the result." Lanasa Fruit S.S. & Imp. Co. v. Universal Ins. Co., 302 U.S. 556, 562, 58 S.Ct. 371, 374 (1938); see also Standard Oil Co. v. United States, 340 U.S. 54, 58, 71 S.Ct. 135, 137 (1950) (stating that proximate cause is the "cause which is most nearly and essentially connected with the loss as its efficient cause"); Tillery v. Hull & Co., 876 F.2d 1517, 1519 (11th Cir. 1989) ("[C]ourts seeking to determine the cause of a vessel's damage assign greater weight to the ultimate, efficient cause than to the temporally remote causes."); United States Fire Ins. Co. v. Cavanaugh, 732 F.2d 832, 835 (11th Cir. 1984) ("In admiralty cases the cause which is truly proximate is that which is proximate in efficiency.").

Florida law has a concurrent cause doctrine. Hrynkiw v. Allstate Floridian Ins. Co., 844 So. 2d 739, 745 (Fla. 5th DCA 2003) ("Under Florida law, the issue of multiple causes in cases involving coverage disputes is usually decided by application of the concurrent cause doctrine."). That doctrine "permits coverage when the injury is caused by multiple causes and one of the causes is an insured risk." Id. The problem for Krilich, however, is that the Florida doctrine "only applies when the causes are not related and dependent, but rather involve separate

5

and distinct risks." Id. All of the experts at trial agreed that Krilich's yacht "would not have sunk as quickly or in the manner that it did if the sea chests had been secured watertight." Doc. 158 at 23.

The undisputed evidence showed that keel fracture was not a separate and distinct risk. Instead, it was a link in the chain of related and dependent causes, and at the end of the chain the unsecured sea chests sunk the yacht. See Hrynkiw, 844 So. 2d at 745. Thus, under Florida law the fracture in the keel was not a concurrent cause. See id. Applying either the federal or the Florida version of the proximate cause doctrine, Krilich loses. It makes no difference, therefore, which one the district court decided to apply. See Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010) ("This court may affirm a decision of the district court on any ground supported by the record.").

**AFFIRMED.**