[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14508
Non-Argument Calendar
_____

D.C. Docket No. 3:18-cv-01392-TKW-EMT

BBG DESIGN BUILD, LLC,

Plaintiff - Appellant,

PATRICIA ARMOR,

Plaintiff - Cross Claimant,

versus

SOUTHERN OWNERS INSURANCE
COMPANY,

Defendant - Cross
Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 23, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

BBG Design Build, LLC (BBG) appeals the district court's grant of summary judgment in favor of Southern Owners Insurance Company (Southern Owners) in BBG's action alleging Southern Owners breached its duty to defend BBG in an underlying negligence action (underlying lawsuit) brought by Patricia Armor. BBG contends the district court erred in looking outside the four corners of the amended complaint and the insurance policy in determining Southern Owners' duty to defend. After review,[1] we affirm the district court because we agree that Southern Owners had no duty to defend BBG in the underlying lawsuit.

## I.  BACKGROUND

---

[1] We review "the district court's disposition of cross-motions for summary judgment *de novo*, applying the same legal standards used by the district court, viewing the evidence and all factual inferences therefrom in the light most favorable to the non-movant, and resolving all reasonable doubts about the facts in favor of the non-moving party." *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).

Southern Owners issued BBG a general commercial liability policy that was in effect from July 2, 2014, to July 2, 2015. The policy provided that Southern Owners had a duty to both defend and indemnify BBG for covered losses.

In 2014, BBG was working as the general contractor on a renovation project at Shelter House, a domestic violence resource center in Ft. Walton Beach where victims received services and resources including temporary lodging. Patricia Armor worked part-time with the Shelter House as a victim advocate. Armor asserted that on or about December 7, 2014, she sustained "bodily injury" from contact with "construction debris" at the Shelter House. She sued BBG for those injuries in the Circuit Court of Okaloosa County, Florida. In the operative First Amended Complaint, Armor claimed BBG was negligent in managing the construction site by failing to ensure proper controls and protections were in place to contain "construction debris." The First Amended Complaint provided no definition of "construction debris" nor did it further describe Armor's "bodily injury."

Southern Owners refused to defend or indemnify BBG for the underlying lawsuit based on the pollution exclusion in the policy. The policy's pollution exclusion denies coverage for "'[b]odily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any

3

time." The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

BBG filed a breach of contract action against Southern Owners in the Circuit Court of Okaloosa County, Florida. Southern Owners removed the case to federal court on the basis of diversity jurisdiction. Southern Owners answered and asserted the policy's pollution exclusion as a defense to the alleged breaches of contract. Later, Southern Owners and BBG filed cross motions for summary judgment.

In its motion for partial summary judgment, BBG argued Southern Owners breached the policy by refusing to provide BBG a defense in the underlying lawsuit when Armor's First Amended Complaint did not clearly and unequivocally plead facts that fit "solely and entirely" within the policy's pollution exclusion. BBG contended the district court could not reach beyond the four corners of the First Amended Complaint in making that determination.

In its motion for summary judgment, Southern Owners asserted it owed BBG no duty to defend because Armor's original Complaint and First Amended Complaint alleged facts that fell squarely within the pollution exclusion. However, if the district court did not agree the First Amended Complaint alleged facts that

4

fell within the exclusion, Southern Owners insisted this case fit into the exceptional line of cases that allows a court to consider facts outside the operative complaint in deciding the duty to defend.  To support this argument, Southern Owners relied on the original Complaint, a pre-suit demand letter Armor's attorney sent to Southern Owners, and Armor's deposition testimony in the underlying case.

The district court granted Southern Owners' motion for summary judgment and denied BBG's partial motion.  The district court agreed with Southern Owners that it could consider extrinsic evidence outside of the First Amended Complaint to analyze the duty to defend and found no duty existed.[2]  The district court considered the allegations in Armor's original Complaint and, by comparing it to the First Amended Complaint, concluded the First Amended Complaint's "more general allegations" were an attempt to plead into coverage.  The district court reasoned that "the amended complaint cannot be fairly read to allege" that Armor was injured by "materials that would not typically be considered irritants or contaminants, such as lumber, nails, bricks, or sheets of glass."  The district court concluded that at some point in legal proceedings "common sense should prevail, which is in essence the basis for the limited exception to the four corners rule."

---

[2] Southern Owners also moved for summary judgment on the duty to indemnify issue, which the district court also granted.  BBG does not appeal the district court's ruling on the duty to indemnify.

5

## II.  DISCUSSION

Under Florida law,[3] "an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage."  *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005).   In determining whether this duty exists, "the trial court is confined to the allegations in the complaint."  *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 33 (Fla. 4th DCA 2003).  Thus, courts generally determine the existence of a duty to defend based solely on the allegations in the complaint, with all doubts resolved in favor of the insured.  *Jones*, 908 So. 2d at 443.  The duty to defend is distinct from and broader than the duty to indemnify, meaning that insurers are obligated to defend even if the allegations in the complaint are inconsistent with the actual facts or meritless.  *See id.*

If we confine our analysis to the allegations in the operative First Amended Complaint, Southern Owners had a duty to defend BBG in Armor's underlying suit.  The allegations in the First Amended Complaint were that Armor suffered bodily injury because of BBG's negligence and BBG's failure to train its employees to prevent construction debris from escaping the renovation activities.  Armor never defines construction debris or bodily injury, so it is impossible to tell

---

[3]  The parties agree the issue framed by the cross motions for summary judgment is governed by Florida contract law.

what type of construction debris escaped the renovation activities, or what type of bodily injury Armor suffered from BBG's alleged negligence. The First Amended Complaint, on its own, cannot be read to allege actions consistent with the policy's pollution exclusion.

This Court has recognized a limited exception to the four corners rule, however, and stated that Florida courts have found "in special circumstances, a court may consider extrinsic facts if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage." *Stephens v. Mid-Contintent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (citing, *inter alia*, *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101 (Fla 4th DCA 1995)). Such cases are "exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." *Id.* (quotations omitted). Further, "[t]he right to an early resolution of a coverage issue should turn on the merits—on whether a policy exclusion applies and not on creative pleading." *State Farm Fire & Cas. Co. v. Higgins*, 788 So. 2d 992, 1005 (Fla. 4th DCA 2001).

*Keen* involved an underlying complaint that omitted a reference to an uncontroverted fact, that, if pled, would have placed the claim clearly outside the scope of coverage. The plaintiff was piloting a watercraft which used an engine

7

that was too powerful to be covered under the insurance policy and conceded that the craft was more powerful than coverage afforded shortly after the incident. *See Keen*, 658 So. 2d at 1102-03. That concession was also backed up by corroborative evidence. *Id.* at 1103. However, the underlying complaint did not allege anything about the horsepower of the craft. *Id.* The court held that "if uncontroverted evidence places the claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, we think the carrier is relieved of defending." *Id.*

The instant case is one of those exceptional cases where the actual facts place the claims outside the scope of coverage. *See Stephens*, 749 F.3d at 1323. The First Amended Complaint omitted a "crucial, undisputed fact in a patent attempt to 'plead into coverage.'" *Wilson ex rel. Estate of Wilson v. Gen. Tavern Corp.*, 469 F. Supp. 2d 1214, 1220 (S.D. Fla. 2006). Before Armor filed the First Amended Complaint, Southern Owners had pre-suit knowledge of uncontroverted facts that placed Armor's claims outside the scope of the Policy's coverage. On February 17, 2016, Southern Owners received a pre-suit demand package from Armor's attorney that included a letter asserting Armor was injured after being "exposed to hazardous fumes and dust" due to BBG's remodeling activities at the Shelter House. The demand package also referenced Armor's medical records where she reported being exposed to fiberglass at a construction site at work and

8

was diagnosed with bronchitis due to fiberglass exposure.  Based on the assertions contained in the demand letter, which were corroborated by Armor's medical records, Southern Owners had knowledge that Armor was claiming bodily injury which would not have occurred in whole or part but for the alleged release or escape of pollutants.  These facts were uncontroverted and remain so.  In her initial complaint, she alleged that while BBG was carrying out renovation activities at Shelter House, "[s]ignificant amounts of construction debris" including "dust and airborne fiberglass" were placed into the air without proper controls or protections, which caused Armor respiratory illness.  While the First Amended Complaint attempts to plead into coverage by not describing the "construction debris" or her "bodily injury," it was undisputed that Armor's alleged injuries included bronchitis resulting from fiberglass exposure, as was made clear by Armor's demand letter, initial complaint, and medical records.

The policy's pollution exclusion denies coverage for "'[b]odily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time.'"  The policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."

9

We agree with the district court that there is no ambiguity in the policy's pollution exclusion, and it clearly encompasses the construction debris of the sort of which Armor complained—fiberglass particulates and other bits of dust in the air as a result of construction work—which caused irritation to her lungs, eyes, and skin when it contaminated the air she breathed.

Thus, this case is one of the rare cases where uncontroverted facts place the claim outside the scope of coverage, and the First Amended Complaint is an attempt to plead into coverage despite the uncontroverted facts.  Southern Owners did not breach its duty to defend BBG in the underlying lawsuit, and the district court is affirmed.

**AFFIRMED.**